LAURIAT *v.* STRATTON and others.

*(Circuit Court, D. Oregon.* March 19, 1880.)

1. PARTIES—BENEFICIARY OF TRUST.

    The beneficiary of a trust is a necessary party to any suit concerning the same.

2. REDEMPTION—SALE UNDER DECREE.

    A sale in pursuance of a decree to ascertain and determine the amount and priority of liens and direct the sale of the premises, and application of the proceeds thereof to the payment of debts secured by the mortgage, extinguishes the liens, and no lienholder has a right to redeem the premises from the purchaser at the sale under section 297 of the Oregon Code, which gives the right of redemption only to a creditor having a lien upon the property sold.

3. RULE OF LAW—TITLE TO REAL PROPERTY.

    The established rule is that in title to real property the national courts will follow the settled construction of the statute, or application of the rule made by the highest court of the state.

4. SAME—REDEMPTION BY SUCCESSOR IN INTEREST.

Under the Oregon Code, §§ 300, 301, a redemption by either of the successors in interest of a judgment debtor at any time while the property was subject to redemption, whether before or after the confirmation of the, sale puts an end to the proceedings, and thereafter the successor in interest holds the property as though no sale had ever been made.

*W. B. Gilbert,* for plaintiff.

*Walter W. Thayer,* for defendants.

DEADY, D. J.   The material facts stated in the bill are that in September, 1878, Hessie J. Shane, the wife of T. A. Shane, purchased the premises of Mary R. Hall, and the same were, by said Mary R. and C. H., her husband, then conveyed to said Hessie J., subject, however, to two certain mortgages thereon, executed by said Hall and wife,—the one on January 1, 1877, to Charles Swegle, to secure the payment of $1,500, with interest at 1 per cent. per month; the other on September 7, 1878, to E. N. Cooke, to secure the payment of $1,200, with like interest; that said Hessie J. entered upon and took possession of the premises at the date of such conveyance to her, and has ever since continued to occupy the same; that in February, 1879, said Swegle brought a suit to enforce the lien of his mortgage in the circuit court of the state for Marion county, making the said Hall and wife, Shane and wife, and Cooke defendants therein; that the said Hall and wife and Cooke answered the complaint, alleging that said mortgage to Cooke was made in trust for said Mary R., and asking the court to correct a mistake in the description therein, and that the remainder of the proceeds of the sale of the premises, after satisfying the debt of Swegle, if any, be retained by the court to await the determination of a suit then pending in said circuit court between said Hall and wife and Shane and wife, to cancel and annul the conveyance aforesaid to said Hessie J.; that said circuit court, on March 8, 1879, made a decree in the suit of said Swegle, to the effect that the mortgage of Cooke was made in trust for said Mary R., and that the mistake in the description be corrected; that the premises be sold and the proceeds applied to the payment of Swegle's debt, and the surplus, if any, be paid to Cooke as trustee, and that the defendants, and all persons claiming under said Hall and wife after January 2, 1877, were thereby barred and foreclosed of all liens or interest or equity of redemption in the premises; that on May 10, 1879, the sheriff, in pursuance of said decree, duly sold said premises to the attorney for Swegle, the defendant Stratton, subject to redemption, for $1,800, that sum being the then amount of Swegle's debt and cost of suit, which sale was afterwards duly confirmed; that on August 5, 1879,

said Hessie J. conveyed her interest in the premises to one Clarno and Liebe, in trust, that they would advance the money and redeem the premises for her benefit, which they did, and that by virtue of such decree and sale the lien of said Cooke upon the premises was extinguished, and said Clarno and Liebe, from the time of said conveyance and redemption, became the owners of the same, freed from said lien; that said Stratton, well knowing this fact, did, on September 22, 1879, as the assignee of the said Cooke mortgage, redeem the said premises from said Clarno and Liebe, who, in ignorance and mistake of their rights and those of said Hessie J., and without her consent or knowledge, received the sum of $1,964, paid by said Stratton upon said redemption; that in October, 1879, said Clarno and Liebe reconveyed the premises to said Hessie J., who in November following conveyed the same to the plaintiff; that on the twenty-eighth of the same month the plaintiff duly tendered to said Stratton, on account of the payment made by him on said last-mentioned redemption, the sum of $1,975, upon condition that said Stratton would release to him all claim upon said land by reason of said assignment and "attempted redemption," which offer was not accepted or answered; and that said Stratton, by means of said redemption, has obtained the sheriff's deed to the premises, which are of the present value of about $3,500.

On the argument nothing was said in support of the cause of the demurrer that the Halls are not proper parties to the suit. The Cooke mortgage having been made in trust for Mary R. Hall, she is the beneficiary thereof, and therefore a necessary party to any suit concerning the same. Story, Eq. Pl. §§ 207–209. And C. H. Hall, being her husband, is properly joined with her. The demurrer in this respect is not well taken.

The argument in support of the first ground of demurrer is that the decree and sale in Swegle's suit did not affect the lien of Cooke's mortgage, and that, therefore, the owner thereof was still a creditor, having a lien by mortgage on the property sold, subsequent in time to that on which it was sold, within the purview of subdivision 2 of section 297 of the Oregon Civil Code, and entitled to redeem the same. In support of this proposition the only authority cited is *Chavener* v. *Wood*, 2 Or. 185.

The Civil Code (sections 410–414) provides for the enforcement or foreclosure of the lien of a mortgage by a suit in equity in which the property subject to the lien shall "be sold to satisfy the debt secured thereby." Section 410. Any person having a lien upon the property subsequent to the plaintiff must be made a defendant in the suit.

Section 411. When it is adjudged in such suit "that any of the defendants have a lien upon the property, the court shall make a like decree in relation thereto, and the debt secured thereby, as if such defendant were a plaintiff in the suit," and "such decree shall determine and specify" the order in which "the debts secured by such liens shall be satisfied out of the proceeds of the sale of his property." Section 412.

The decree, in the first instance, is enforced by means of an execution "against the property adjudged to be sold," and if the decree is "in favor of different persons not united in interest," the execution can only issue upon their joint application, or by the order of the court upon the motion of either of them. When the decree is also *in personam*, as it may be where there is also a promissory note, or other personal obligation, for the payment of the debt, and "the proceeds of the sale of the property upon which the lien is foreclosed are not sufficient to satisfy the decree as to the sum remaining unsatisfied, the decree may be enforced by an execution as in ordinary cases;" and, in "such case,"—that is, as to the portion of the decree not satisfied by the proceeds of the sale of the property, —the decree, if in favor of different persons not united in interest, "shall be deemed a separate decree, and may be enforced accordingly." Section 413. The decree has the effect to bar the equity of redemption, but the property sold thereon "may be redeemed in like manner and with like effect" as property sold upon a judgment, "and not otherwise." Section 414.

In *Frink* v. *Murphy*, 21 Cal. 112, the court held, but with apparent hesitation and doubt, that a subsequent encumbrancer, who was a party defendant to a suit to enforce the lien of a mortgage, might redeem the property from the purchaser at a sale upon the decree that ascertained and provided for the payment of his debt from the proceeds thereof, but which was not sufficient for that purpose, saying: "Considering the whole system of redemptions as affected by our statutes, we think the phrase 'on which the property was sold' must be held to refer to the lien which the action was brought to enforce, and that it does not apply to the liens of subsequent encumbrancers who are made parties."

But the statute of California did not provide that the decree should determine the rights or make any provision for the benefit of the subsequent encumbrancer, and therefore the adjudication was confined to the right and relief of the plaintiff, and, as incident thereto, cutting off the subsequent encumbrancer's equity of redemption.    Hittel,

Laws Cal. § 5185–87. And the court, in *Frink* v. *Murphy,* say that it was not the practice in that state to make provision in the decree for the benefit of the subsequent encumbrancers.

In *Chavener* v. *Wood, supra,* so far as in point, the case was that the plaintiff had a mortgage upon the interest of I. D. Haines in a certain parcel of land, and Wood had a subsequent mortgage upon the same interest. The premises were sold upon a decree made in a suit brought by Chavener to enforce the lien of his mortgage, to which Wood, as a subsequent encumbrancer, was made a party. A decree was made ascertaining the rights of both parties in the premises, and directing a sale, and that the proceeds be applied in satisfaction of their claims in the order of their priority. At the sale Chavener became the purchaser, and the sheriff allowed Wood to redeem, upon the assumption that he was still a creditor, having a lien by mortgage upon the property sold. Upon the application of Chavener the court, *Prim,* J., set aside the redemption as illegal, and Wood appealed. The supreme court reversed the decision, holding, *Shattuck,* J., that the sale was made upon the execution of Chavener to satisfy his separate decree, and not that of Wood, and therefore the lien of the latter was not extinguished and he might redeem. But this conclusion appears to depend upon a misapprehension of the terms of the statute. The opinion assumes that by section 413, *supra,* a decree for the sale of mortgaged premises to satisfy the liens thereon of both the plaintiff and defendant, is, in such respect, a separate decree as to each, and may be enforced accordingly. But this is clearly a mistake. The decree is not the separate decree of either party, so far as it relates to the sale of the property, but only when and so far as it is or becomes a mere decree for the recovery of money. And therefore when the proceeds of the sale of the mortgaged premises are insufficient to satisfy the whole decree, thereafter, and as to any sum remaining unsatisfied, it is a mere decree for the recovery of money, and may be enforced accordingly. And, in "such case," if "the decree is in favor of different persons not united in interest," then it shall be deemed the separate decree of each of them, and may be enforced as such.

But it matters not how many parties there are to the suit having a lien upon the premises, or whether they are plaintiffs or defendants; so far as such liens are concerned there is but one decree, and this decree ascertains and determines the respective rights in the premises of all the lienholders as if they were all plaintiffs in the case, and directs the sale of the premises to satisfy the same. The

execution, which is nothing but a *venditione exponas*, or order of sale, to enforce this portion of the decree, is the process of all the parties for whose benefit the decree directs the sale to be made. The decree and sale operate to extinguish the lien upon the premises of all the parties alike, and therefore it only exists against the proceeds of the sale. The Code (section 412) expressly provides that the "debts secured by such liens"—that is, the liens ascertained and determined by the decree—"shall be satisfied out of the proceeds of the sale of the property."

It cannot be denied, and is admitted, that if the sale was made in pursuance of a decree in favor of Cooke, as mortgagee, and upon process to enforce such decree as to his lien as well as that of Swegle, his lien was thereby extinguished. *Sheperd* v. *O'Neil*, 4 Barb. 125; *Wood* v. *Colvin*, 5 Hill, 228; *Ex parte Stevens*, 4 Cow. 133; *Frink* v. *Murphy*, *supra*, 112. And it appears to me almost too plain for argument that such, and none other, is the very effect which the statute gives to this proceeding.

The lien of the Cooke mortgage having been extinguished by the sale upon the decree to enforce the lien thereof, the defendant Stratton, as the assignee of Cooke, had no lien upon the property sold, and therefore no right of redemption under the statute. If he wanted the property at any figure beyond the amount due Swegle he should have overbid him at the sale.

The policy of the statute is to make the property pay the debts of the owner as far as possible. To this end it is provided that as to all the creditors who are parties to the decree, the property shall be absolutely disposed of at one sale to the highest bidder upon an execution, which is, in legal intendment and effect, the process of all of them. By this means the interest of the creditors is made to promote a healthy competition at the sale for the benefit of the debtor. But to allow the property to be sold to any one of the creditors for the amount of his debt and costs, upon the understanding that the other creditors, whose liens are subsequent in point of time, may protect themselves by redeeming from him and one another, would be to provide in effect that the property should be knocked down to the prior lien creditor for not more than the amount of his debt and costs, subject to the right of redemption by the junior creditors.

Besides, if the lien of the subsequent encumbrancer is not extinguished by the sale, what is there to prevent him from enforcing the decree as to himself by execution? It appears to follow as a logical and legal consequence from the premises that if his lien is neither

extinguished nor satisfied by the sale, and the decree has ascertained the fact and amount of his lien, and directed the premises to be sold to satisfy it, he has his remedy by execution against the property, and may resell it subject to prior encumbrances. And this process may be repeated under like circumstances by every other encumbrancer. But the statute certainly never contemplated such an absurdity, let alone injustice, as this.

The right of redemption is only given as a protection against a sale to which the redemptioner is not a party, and therefore cannot control, but which may result to his injury. In the very nature of things the right to redeem is inconsistent with the right to sell.

The right to redeem from a sale upon a decree to enforce the lien of a mortgage is given by the statute in "like manner and with like effect" as in the case of property sold on a judgment at law, and not otherwise. Civ. Code, § 414. The plaintiff in the execution, the party for whose benefit or relief the property is sold, has no more right to redeem or reason for so doing in the one case than the other. He causes the sale; it is his act, and he cannot annul it or obviate the effects of it by redemption. His means of protection against an improvident sale are ample. He can choose his own time to offer the property for sale, and then, if need be, he can take it for his debt and costs by bidding that sum for it.

No question is made that the plaintiff is entitled to the relief sought if Stratton had no right to redeem. The redemption was allowed by the sheriff, and although Clarno and Liebe accepted the money from the sheriff, they did so without procuring or consenting to the redemption. In the *People* v. *Rathbun*, 15 N. Y. 528, it was held that where a redemption was allowed without authority of law, the purchaser was not estopped to assert his right to the sheriff's deed as against such redemptioner, although he had received the money paid thereon.

In this case the plaintiff has offered to return the money paid on the redemption, and is still ready to do so.

Then, as to this point, the case must turn upon the question whether this court will follow the ruling in *Chavener* v. *Wood, supra,* or decide this case according to the plain letter and intention of the statute. It is the established law of the national courts that in the application of a statute of the state, or a rule of law relating to the title to real property, they will follow the settled construction of the statute or application of the rule made by the highest court of the

state. *Polk's Lessees* v. *Wendal*, 9 Cranch, 98; *Jackson* v. *Chew*, 12 Wheat. 162; *Nichols* v. *Levy*, 5 Wall. 433.

The propriety, and even necessity, of this rule is admitted. But, under the circumstances, I am loath to accept this single decision as the settled construction of the statute. It appears to have been made upon a misapprehension of its provisions, and when brought to the attention of the court will doubtless be corrected. Its application in this case would work a very serious injustice to Hessie J. Shane, or her grantee.

So far I have considered the case upon the points made in the argument, but, upon a further examination of it, it is clear to my mind that the redemption by Clarno and Liebe put an end to the effect of the sale and prevented any further redemption by any one.

By sections 300 and 301 it is provided that the judgment debtor, or his successor in interest, may redeem at any time prior to the confirmation of sale on certain terms therein specified, and also after confirmation of the sale; but, in such case, only "within the time and upon the terms allowed to a lien creditor." But "if the judgment debtor redeem at any time before the time for redemption expires, the effect of the sale shall be terminated, and he shall be restored to his estate."

At the date of the mortgages to Swegle and Cooke, Mary Hall was the owner of this property, and, for the purpose of redemption, is to be deemed the judgment debtor in the decree providing for the enforcement of the liens of said mortgages. But at the date of this decree Hessie J. Shane had become the successor in interest of Mary R. Hall, and before the redemption by Stratton, Clarno and Liebe had succeeded to her interest, and sustained the same relation to this decree as the successor in interest of a judgment debtor in a judgment at law. A redemption, then, by either of the successors in interest of Mary R. Hall, at any time while the property was subject to redemption, whether before or after the confirmation of the sale, put an end to the proceeding, and thereafter such successor held the property as though no sale of the same had ever been made.

While a judgment debtor who redeems after the confirmation of the sale must as to time and terms redeem as a lien creditor, the effect of such redemption is different. For in case of a redemption by a judgment debtor at any time, whether before or after confirmation of sale, the statute declares in so many words that the effect of it shall be to terminate the proceeding and restore him to his estate. The sale is *functus officio*, and no further redemption can be had

thereon or by reason of it.    Upon this view of the subject it follows, of course, that the redemption by Stratton was illegal, and the deed to him from the sheriff is either null and void or received in trust for the person entitled to it—Hessie J. Shane or her successor in interest.

The demurrer is overruled, and the plaintiff is entitled to the relief sought against the defendants, upon the repayment to Stratton of the sum of $1,964, with legal interest from the date of its receipt by Clarno and Liebe to November 28, 1879, the date of the offer to return it to him.