Argued April 9; reversed April 30; argued on rehearing October 8; former opinion set aside and case affirmed December 10, 1946; second petition for rehearing denied February 11, 1947

# ULRICH et al. *v.* LINCOLN REALTY CO. et al. (JAMES, Intervener)

(168 P. (2d) 582, 175 P. (2d) 149)

*MacCormac Snow,* of Portland (with Harvey S. Benson, of Portland, on brief), for appellant.

*Verne D. Dusenbery,* of Portland (Crum, Dusenbery & Martin on brief), for respondent.

Before BELT, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Justices.

LUSK, J.

The question for decision may be stated as follows: Where one not liable on the mortgage indebtedness acquires the legal title to mortgaged premises during the pendency of a suit to foreclose and thereafter redeems from the foreclosure sale, may the holder of a judgment for an unsatisfied balance of the mortgage indebtedness cause the property so redeemed to be sold again on execution for the satisfaction of such balance?

The answer depends upon the proper interpretation and application of certain provisions of our statute relating to mortgage foreclosures, redemption and execution.

Prior to 1917, when important legislative amendments affecting this case were adopted, a person redeeming under the circumstances stated took the property free from the burden of the judgment. This was decided in *Willis v. Miller*, 23 Or. 352, 31 P. 827. The statute in effect at that time (Hill's Code, § 303) provided that the judgment debtor or his successor in interest might redeem, and the grantee of the legal title before foreclosure was held to be a successor in interest within the meaning of that provision. While the conveyance in that case was made before the suit to foreclose was commenced, the ground of the decision that the property could not be sold again to satisfy the balance due on the judgment left no room, as will later appear, for a distinction between that kind of a case and a case in which redemption is made by a grantee of the legal title pending foreclosure proceedings. Previous to *Willis v. Miller* it had been held in *Settlemire v. Newsome*, 10 Or. 446, that, where lands were sold on execution for an amount less than the mortgage indebtedness and redeemed by the grantee of the judgment debtor, the lands might be sold again for the balance due on the judgment. The identical question again came before the court in *Flanders v. Aumack*, 32 Or. 19, 51 P. 447, 67 Am. St. Rep. 504, and the decision in *Settlemire v. Newsome* was approved and followed. It was said in an opinion by Mr. Justice WOLVERTON that "the authorities are practically uniform that a redemption by the judgment debtor of his lands sold under execution will reinstate the lien of the judgment for any balance remaining unpaid, and

subject the lands to a resale to satisfy such balance'', and that the successor of the judgment debtor ''is not a *bona fide* purchaser for value, but simply occupies the shoes of his predecessor, with no new enlarged rights or privileges, and can neither exercise nor enjoy any that the judgment debtor did not possess or could not have enjoyed.'' In answer to the contention that *Settlemire v. Newsome* had been overruled by *Willis v. Miller*, the court said that the deficiency judgment was against the mortgagor alone, and therefore never became a lien against the land in the hands of his grantee who had acquired the legal title prior to foreclosure. It was said:

> ''A mortgage is a specific lien, which attaches by virtue of the contract of the parties concerned; but the lien of a judgment is general, and attaches by operation of law, as a sequence of its rendition. Foreclosure is a remedy by which the property covered by the mortgage may be subjected to sale for the payment of the demand for which the mortgage stands as security, and, when the decree is had and the property is sold to satisfy it, the mortgagee has obtained all he contracted for; but, if there is also a personal decree against the mortgage debtor, this becomes, from the date of the docketing, a general lien upon his real property, as in case of a judgment; and, if a deficiency remains after the application of the proceeds of the sale of the lands covered by the mortgage, the decree may be enforced by execution, as in ordinary cases: Hill's Adm. Laws, § 417, subd. 2. The re-sale does not take place under the order for the sale of the specific property covered by the mortgage lien, for that has been exhausted, but under the personal decree which remains as a deficiency decree against the mortgage debtor after the application of the proceeds arising under the order of sale; and a redemption will not reinstate the specific mortgage lien, while

it will the general lien acquired by the personal decree. This distinction is clear, and is bottomed both upon principle and authority. The redemption is from the sale, and not from the mortgage; and, if the lien of the personal decree has never attached, by reason of the mortgagor not having the fee of the property at the time it was rendered, there never existed any lien to be reinstated against his successor in interest, who purchased prior to the decree." (32 Or. 29)

See, also, *Williams v. Wilson*, 42 Or. 299, 304, 70 P. 1031, 95 Am. St. Rep. 745.

Such seems to have been the state of the law on this subject when the case of *Higgs v. McDuffie*, 81 Or. 256, 157 P. 794, 158 P. 953, came before the court. The principal question in that case was whether Higgs, a mortgagor who had conveyed the mortgaged premises before foreclosure and against whom a judgment was rendered for the mortgage indebtedness, had the right to redeem from the foreclosure sale. The statute governing redemption then in effect (§ 245, L. O. L.) provided:

"Property sold subject to redemption, as provided in the last section, or any part thereof separately sold, may be redeemed by the following persons or their successors in interest:—

"1. The judgment debtor or his successor in interest, in the whole or any part of the property separately sold;

"2. A creditor having a lien by judgment, decree, or mortgage on any portion of the property, or any portion of any part thereof, separately sold, subsequent in time to that on which the property was sold.

"The persons mentioned in subdivision 2 of this section, after having redeemed the property, are to be termed redemptioners."

It was held in an opinion by Mr. Justice BURNETT that Higgs, as a judgment debtor, came within the first subdivision of the statute above quoted. It was contended, however, that he had lost the right to redeem through having conveyed the mortgaged premises prior to foreclosure, and that this right was now in his grantee as the successor in interest to the judgment debtor. But the court held that no judgment debtor came into existence until after the decree, and therefore there could be no successor in interest to a judgment debtor prior to the decree. It appeared that after the sale the owner of the legal title quit-claimed to one Mahoney. It was said that Mahoney took nothing by the deed because, in the view of the court, all that Higgs conveyed by his deed was the "equity of redemption", meaning by that phrase, not the right of redemption given by the statute, but the "contract right of redemption", which has come down to us from the common law, and constitutes in modern jurisprudence "the fee-simple estate of the mortgagor encumbered by the lien of the mortgage, there being no title conveyed to the mortgagee by that instrument". This right of the grantee, who took subject to the mortgage, was cut off by the decree by reason of the statute which then provided:

> "*A decree of foreclosure shall have the effect to bar the equity of redemption,* and property sold on execution issued upon a decree may be redeemed in like manner and with like effect as property sold on an execution issued on a judgment, and not otherwise." § 427, L. O. L. (Italics added)

The court said:

> "His contract right to redeem, or, in other words, his equity of redemption, named in Section 427, L. O. L., all he took as successor of Higgs in

his character as owner or mortgagor, was gone beyond recall. After the decree it could not be made the basis of any further operation affecting the title. When Higgs conveyed, he was not a judgment debtor, and could not transfer any right of such a character, for there was nothing of the kind in existence to sell. When, and not until, by the decree it had been determined that Higgs was a judgment debtor, a statutory privilege appertaining to one thus declared to be personally liable for the debt came into being for the first time. It related exclusively to the particular lands in question, and only then or afterward could anyone become the successor in interest of the judgment debtor within the true meaning of Section 245, L. O. L., read in connection with Section 427, L. O. L., both being parts of the same act." (81 Or. 268)

Mr. Justice HENRY J. BEAN wrote a specially concurring opinion in which he dissented from the view of the majority that Higgs was not a judgment debtor at the time that he conveyed and that his grantee had no right to redeem, and called attention to *Willis v. Miller* and *Jacobson v. Lassas*, 49 Or. 470, 473, 90 P. 904, and to the opinion of Judge DEADY in *Lauriat v. Stratton*, 11 Fed. 107, in which a contrary view was expressed. He also referred to *Kaston v. Storey*, 47 Or. 150, 80 P. 217, 114 Am. St. Rep. 912, in which Mr. Justice ROBERT S. BEAN said:

"The legal title remains in the mortgagor or his successor in interest until a sale under a foreclosure decree has ripened into a title by the execution and delivery to the purchaser of a sheriff's deed in due course of law",

and to a similar pronouncement in *Dray v. Dray*, 21 Or. 59, 27 P. 223. He concurred, however, in the conclusion that Higgs, the judgment debtor, was entitled to redeem.

*Higgs v. McDuffie* was decided in 1916, and at the next succeeding session of the legislature, in 1917, §§ 427 and 245, L. O. L., the construction of which governed the decision in that case, were radically amended. Section 427, L. O. L., was amended by § 3, Ch. 352, General Laws of Oregon 1917, now § 9-507, O. C. L. A., and reads as follows:

"A decree of foreclosure *shall order the mortgaged property sold,* and property sold on execution issued upon a decree may be redeemed in like manner and with like effect as property sold on an execution issued on a judgment, and not otherwise. A sheriff's deed for property sold on execution issued upon a decree shall have the same force and effect as a sheriff's deed issued for property sold on an execution issued on a judgment." (Italics added)

Section 245, L. O. L., was amended by § 1, Ch. 352, General Laws of Oregon 1917, now § 6-1602, O. C. L. A., and reads as follows:

"Property sold subject to redemption, as provided in the last section, or any part thereof separately sold, may be redeemed by the following persons:

"1. The mortgagor or judgment debtor whose right and title were sold, or his heir, devisee, or grantee, who has acquired, by inheritance, devise, deed, sale, or by virtue of any execution, or by any other means, the legal title to the whole or any part of the property separately sold; *provided, however,* that in the event redemption is made by anyone acquiring the legal title after attachment, or after the institution of suit to foreclose a mortgage or lien, or after a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such attachment or judgment or the institution of such suit."

(Remainder of statute unchanged)

■ The 1917 legislation without doubt was the consequence of the decision in *Higgs v. McDuffie*. Its central purpose, so far as it concerned mortgages, was to change the rule of that case that a grantee of the legal title before foreclosure was not entitled to redeem, and to reestablish, in large part, the law on that subject as it had been theretofore announced by this court. To this end, not only was express provision for such redemption made, but one ground of the decision in *Higgs v. McDuffie* was removed by eliminating the provision of the old statute that "a decree of foreclosure shall have the effect to bar the equity of redemption", and substituting therefor the language which now appears in § 9-507, O. C. L. A.: "A decree of foreclosure shall order the mortgaged property sold". The amendment, however, did not stop at that point. As we have seen, it had been decided that the grantee redeeming (where he was not personally liable on the mortgage debt) took the property free from the lien of a deficiency judgment. *Willis v. Miller,* supra. With respect to that question the 1917 act created two classes —those who acquired the legal title before the institution of a suit to foreclose and those who acquired such title afterwards; and, as to the latter, provided that their right to the property so redeemed should be no greater or better than the right of "the holder of the legal title at the time of the institution of such suit." Since it is a redemption statute we are construing, it is obvious that this language refers to the right of redemption in the one who held the legal title at the time mentioned. In this case that person was the Lincoln Realty Company, and the exercise of the right by it would have carried with it the liability to have the property resold to satisfy the balance due on the judgment. *Flanders v. Aumack,* supra; *Settlemire v. New-*

*some,* supra. If the respondent were permitted to redeem free from that liability, he would certainly be accorded a better and greater right than the holder of the legal title at the time of the institution of the foreclosure suit, and the legislative mandate would be violated.

This is the plain meaning of the statute, and no other reasonable interpretation has been suggested in argument.

Counsel for the respondent Roehr, however, contend that so to construe the statute would bring it into conflict with the judgment lien statute, § 6-801, O. C. L. A., which provides in part:

> "From the date of docketing a judgment, as in this chapter provided, or the transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon."

It is argued that the interpretation of the 1917 amendment which we have adopted would create an exception amounting to an amendment, or partial repeal by implication, of the foregoing provision, and that a legislative intent of that sort will not be lightly implied, nor implied at all if any other reasonable construction can be given the 1917 act. Further, counsel call attention to the fact that the judgment lien statute was reenacted in 1929 (General Laws of Oregon 1929, Ch. 365), and thus it cannot be contended that the amendment to the redemption statute as a later enactment should prevail.

It should be first observed that this entire contention harks back to *Willis v. Miller* and the reasoning

upon which the court proceeded in that case, for it was there said:

> "The defendants received the benefit of the sale, or the proceeds of it, in payment of their debt, and it operated as a sale to them, and consequently to extinguish the mortgage lien upon the land; and as the personal judgment for the deficiency is against the judgment debtor Phipps, it could not, when docketed, have created any lien against the property of the plaintiff, nor could any execution issued upon such judgment affect it." (23 Or. 361)

In other words, the proposition which we are asked to approve is that, notwithstanding language in the proviso of the 1917 amendment which was plainly intended to limit the right of redemption conferred upon a grantee who acquired the legal title pending foreclosure proceedings, the law remains unchanged since the decision in *Willis v. Miller*. Only the most potent reasons would justify us in yielding to such a contention. It is the court's duty to ascertain the legislative intent, and, if possible, to give it effect. The right of redemption is purely statutory, "and cannot be enlarged, abridged or defeated by the court in the foreclosure decree or otherwise." 3 Wiltsie on Mortgage Foreclosure, (5th ed.) 1665, § 1062. The right can be exercised, as the same author says, "only in the manner, upon the conditions and by the persons described in the statute." Id. 1671, § 1068. "If the statute which authorizes the sale and gives the redemption right likewise declares the effect of the sale and allowance of the right, that effect, and it alone, may be allowed." 23 C. J., Executions, 727, § 753.

It is unnecessary, as we view the matter, to determine that the legislature intended to create an exception in the judgment lien statute or to amend it by im-

plication, for, in our opinion, the manifest purpose of the legislature has been otherwise accomplished.

Although the opinion in *Willis v. Miller* was written by Chief Justice LORD, he did not agree with the decision that the redeeming grantee took the property free of the lien of the deficiency judgment. After summarizing the view of the majority in the language last above quoted from that case, he said:

"On my own behalf, I am obliged to say that I am unable to acquiesce in this doctrine. I do not think that the decree of foreclosure and sale merges or extinguishes the lien of the mortgage. The mortgage lien is a specific one, and the judgment obtained is a general one. The suit of foreclosure is a remedy for the enforcement of the lien, and certainly is not intended to have the effect to impair or abridge the mortgage lien. That effect can only be accomplished by payment of the mortgage debt, or a release. The lien was created by the mortgage, and the decree neither added to nor took anything from it, and the effect of the sale under it was vacated or terminated by the redemption, and thereafter the mortgage and judgment of foreclosure stood as though no sale had ever been made." (23 Or. 361)

The view thus expressed has been said to be supported by the weight of authority (37 Am. Jur., Mortgages, 79, § 596), although it is not the judicial doctrine of this state. But the legislature undoubtedly was invested with the power and authority to provide, at least as to future mortgages, that the governing law should be in accordance with Chief Justice LORD's views, and this, we think, it has done to the limited extent stated in the proviso in § 6-1602, O. C. L. A. The effect of the proviso, as it relates to redemption by one in the position of the respondent Roehr, is to preserve the lien of the mortgage against the property

after redemption in the hands of such a person. In that way the expressed intention of the legislature that one so redeeming should have no greater or better right than the owner of the land at the time of the institution of the foreclosure suit is given effect. It follows that the property may be resold for the balance due on the judgment and that the execution was erroneously recalled.

■ Counsel for respondent argue that the statute thus construed is inequitable. That is a consideration which, if founded on fact, might weigh in the balance were a choice of equally reasonable constructions presented. But there is no such choice. The only interpretation suggested by the respondent is, as stated in his brief, the following:

> "The redemption statutes provided that where redemption was made by the judgment debtor the effect of the sale was terminated and he was restored to his estate (Sec. 6-1606), and when final redemption was made by a redemptioner he was entitled to a sheriff's deed (Sec. 6-1606). But there was nothing in the statute to show the effect of a redemption by a successor in interest of the judgment debtor. The proviso would have the effect of making it clear that when redemption was made by such successor in interest he was not like the redemptioner entitled to a sheriff's deed cutting off subsequent liens and encumbrances, but acquired only the title which his grantor had."

In our opinion the suggested construction is wholly inadmissible. The "redemptioner" referred to in the foregoing excerpt from respondent's brief is defined in § 6-1602, Subd. 2, O. C. L. A., as "a creditor having a lien by judgment, decree or mortgage on any portion of the property, or any portion of any part thereof, separately sold, subsequent in time to that on which

the property was sold", and who has redeemed the property. That provision has been in the statute from the beginning, and it is only such a creditor or a purchaser at the sheriff's sale who has ever been entitled to "a sheriff's deed cutting off subsequent liens and encumbrances." The distinction between the effect of redemption by a redemptioner and by those enumerated in the first subdivision of § 6-1602 was thus stated by Mr. Justice WOLVERTON in *Flanders v. Aumack,* supra, 32 Or. at p. 26:

> "The statute has provided for redemption by but two classes of persons,—the judgment debtor and his successor in interest, and creditors having liens, etc. A redemption by the latter class is with a purpose of securing a sheriff's deed in pursuance of the sale, and a redemption by the former is inimical to the sale, and puts an end to it; and the effect cannot be different whether the judgment debtor or his successor in interest redeem."

That language, it is true, was used in a case where the judgment debtor's interest in the property was conveyed after the judgment was rendered and docketed. But *Willis v. Miller* had already established that one who acquired the legal title to mortgaged premises from the mortgagor before the decree was the successor in interest of the judgment debtor, and sustained the same relation to the decree as the successor in interest of a judgment debtor in an action at law, and was therefore entitled to redeem. And see *Lauriat v. Stratton,* supra. That doctrine was overturned by *Higgs v. McDuffie,* but it was restored by the first part of the 1917 amendment in the provision granting the right of redemption to the grantee of the mortgagor. When the amendment was adopted the second subdivision of the act which creates the category of "re-

demptioners'' was preserved intact. What has since become § 6-1606, O. C. L. A., was, prior to the 1917 amendment, § 249, L. O. L., and that section was itself amended by Ch. 7, Oregon Laws 1917 (the change made having no materiality for present purposes) so as to' read:

> "If redemption be not made as prescribed in this Act, or when redemption is made and a period of sixty days shall have elapsed without any other redemption, the purchaser or the redemptioner, as the case may be, shall be entitled to a conveyance from the sheriff. If the judgment debtor redeem at any time before the time for redemption expires, the effect of the sale shall terminate and he shall be restored to his estate."

Thus, it is as clear as language can make it that no one but a "redemptioner" or the purchaser at the sale can, or ever could, acquire a deed from the sheriff, and that the grantee of the mortgagor, as such, is neither. There is no evidence in our judicial or legislative history pertaining to this subject to suggest, even remotely, the least doubt on this score, and it is an extreme and unwarranted view that the legislature was concerned with that question when it undertook to reverse the rule of *Higgs v. McDuffie*. What obviously concerned it were the questions arising in the decisions discussed and, to some extent, overruled in that case, including the question here presented on which the court divided in *Willis v. Miller*.

■■ It is also argued in respondent's brief that to adopt the appellant's contention would overturn a rule of property long acted upon by property owners and title insurance companies under the advice of lawyers. But the only rule of property involved is the 1917

amendment of the redemption statute, which has never before been construed by this court. Where a court has judicially determined the law on a question of this sort it may be presumed that people will govern themselves accordingly. But there is no presumption that they will act upon the construction of a statute which the courts ultimately determine to be erroneous. We have no evidence to support the assertion of the respondent. And we think that the language of the proviso in the 1917 amendment is such as to suggest strongly to the legal mind that until its meaning was judicially settled, there would always be doubt, at least, as to the extent of the redemption right of a person whose position was that of the respondent.

It follows that the judgment of the court below should be, and it is, reversed.

---

Argued on rehearing October 8; former opinion set aside and case affirmed December 10, 1946; second petition for rehearing denied February 11, 1947

## ON REHEARING
### (175 P. (2d) 149)

Before BELT, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Justices.

LUSK, J.

We granted a rehearing in this case because of doubts as to the correctness of our decision created by the consideration of points not specifically called to our attention in the original presentation of the case.

It was our view, as stated in our former opinion, that by reason of the proviso in Subd. 1, § 6-1602, O. C. L. A., a grantee of mortgaged property, acquiring title

from the mortgagor after commencement of a suit to foreclose, who redeemed from the sale on execution in the foreclosure proceedings, took the property subject to the liability to have it sold again for the satisfaction of any balance remaining due on the judgment. We held that in those circumstances the lien of the mortgage to the extent of the unpaid balance was not extinguished but was reinstated against the property in the hands of such redeeming grantee, and could be enforced by execution, as in this case, directing satisfaction of such balance out of the mortgaged property. We have not altered our opinion as to the ultimate purpose intended to be accomplished by the legislature in passing the act in question; but, in the light of fresh argument and newly suggested objections, the conclusion is compelled that the legislature has neglected to provide the machinery for accomplishing its purpose, and that the proviso, so far as it relates to mortgages, must therefore be declared inoperative and void.

We thought that objections, urged by the respondent, that the right to issue the execution here in controversy could not be sustained without holding that certain sections of the statute relating to judgment liens and writs of execution had been impliedly amended, might be avoided by imputing to the legislature an intention to preserve the lien of the mortgage in the circumstances stated.

■ But that interpretation involves difficulties first brought to light upon the rehearing. It has long been the law of this state that in a mortgage foreclosure suit "when the decree is had and the property sold to satisfy it, the mortgagee has obtained all he contracted for; but, if there is also a personal decree against the mortgage debtor, this becomes, from the date of its

docketing, a general lien upon his real property, as in the case of a judgment; and, if a deficiency remains after the application of the proceeds of the sale of the lands covered by the mortgage, the decree may be enforced by execution, as in ordinary cases"; but, "if the lien of the personal decree has never attached, by reason of the mortgagor not having the fee of the property at the time it was rendered, there never existed any lien to be reinstated against his successor in interest, who purchased prior to the decree." *Flanders v. Aumack*, 32 Or. 19, 29, 51 P. 447, 67 Am. St. Rep. 504. See former opinion in this case, 168 P. (2d) 582, 584.

So, in this case, since the respondent Roehr held the legal title to the mortgaged property when the decree of foreclosure was docketed, the lien of the personal judgment against Lincoln Realty Company, the mortgagor, never attached to the property. One of the consequences of this doctrine is, that a party obtaining a judgment against the mortgagor while the foreclosure suit is pending, would, in case of redemption by the mortgagor or his grantee, have a lien superior to that of a deficiency judgment rendered in the foreclosure suit. At least this is true if such judgment creditor has not been made a party to the foreclosure suit. See *Williams v. Wilson*, 42 Or. 299, 70 P. 1031, 95 Am. St. Rep. 745. The reason for this is that the judgment becomes a lien upon the defendant's real property "from the day of docketing" (§ 6-801, O. C. L. A.), and the deficiency decree is not a lien against the property in the hands of the redeeming mortgagor by virtue of the mortgage, but by force of the judgment lien statute. As the court said in *Flanders v. Aumack*, supra, "a redemption will not reinstate the specific

mortgage lien, while it will the general lien acquired by the personal decree." So, the intervening judgment, being prior in time to the deficiency decree, is superior in right. It is not cut off by the decree and sale in the foreclosure proceedings, for when "an inchoate sale under the decree is arrested and the effect thereof terminated by the judgment debtor or his successor in interest redeeming, the judgment lien creditor is not deprived of his right to proceed on his judgment as against the debtor or his grantee". *Kaston v. Storey,* 47 Or. 150, 155, 80 P. 217, 114 Am. St. Rep. 912.

■ The effect of our decision, however, would be to subordinate the lien of such a prior intervening judgment to that of the subsequent deficiency judgment in all those cases where redemption is made by one who has acquired the legal title after the commencement of foreclosure proceedings, for the reason that, under the theory which we adopted, the lien of the deficiency judgment, being the lien of the mortgage itself, would relate back to the day of the execution of the mortgage. 34 C. J., Judgments, 583, § 890. As stated in 2 Freeman on Judgments (5th ed.) 2066: "Where the judgment is rendered in an action for the enforcement of a statutory or contract lien the lien of the judgment, at least as far as its priority is concerned, dates from the time of the previous lien which it enforces."

There was such an intervening judgment in this case. It was obtained by W. W. Banks, and execution was issued thereon after the foreclosure sale and the property bought in by Earle Goss, who was acting on behalf of the respondent Roehr. These facts were mentioned in the briefs and argument on the original presentation of the case, but counsel at that time

apparently attached no special significance to them, nor did this court.

Under the law as it has always been in this state, the Banks judgment would be superior in right to the appellant's deficiency judgment. Under our decision the Banks judgment would lose its preferred position and be postponed to the deficiency judgment. We cannot believe that any such result was contemplated or intended by the legislature in enacting Subd. 1 of § 6-1602. That section does not deal with the rights of lien claimants other than the mortgagee, and was not intended, we think, to affect such rights; and, since the statute as construed by us would affect the rights of third persons in the manner here pointed out, we are persuaded that our decision cannot be adhered to.

We are faced then with the question whether, under existing statutes providing for the enforcement of judgments, there is any authority for the issuance of the writ of execution in question.

It will be remembered that the only personal judgment in the case was rendered against Lincoln Realty Company, and that, at the time of its rendition, title to the mortgaged lands was in the respondent. The relevant statutes are as follows:

Section 6-801, O. C. L. A., provides in part:

"From the date of docketing a judgment * * * such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon."

The foregoing provision is made applicable to suits by § 9-210.

Section 9-504, which deals with the enforcement of the decree in a suit to foreclose a lien, provides in Subd. 2:

> "When the decree is also against the defendants or any one of them in person, and the proceeds of the sale of the property upon which the lien is foreclosed is not sufficient to satisfy the decree as to the sum remaining unsatisfied, the decree may be enforced by execution as in ordinary cases. When in such case the decree is in favor of different persons not united in interest, it shall be deemed a separate decree as to such persons, and may be enforced accordingly."

Section 6-1102, Subd. 1, provides in part with reference to the writ of execution:

> "It shall require the sheriff to satisfy the judgment * * * *out of the real property belonging to him* (the judgment debtor) *on the day when the judgment was docketed in the county, or at any time thereafter*". (Italics added)

The writ of execution caused to be issued by the respondent did not follow the provisions of § 6-1102, Subd. 1, above quoted, but instead commanded the sheriff of Multnomah County to satisfy the judgment "out of the real property belonging to said debtor in this county on and after the 17th day of January, 1942", which was not the day on which the judgment was docketed, but the day on which the foreclosure suit was commenced.

Obviously, the right to proceed upon such a writ cannot be sustained except by holding that the effect of the proviso in Subd. 1 of § 6-1602 (the redemption statute) was to amend and partially repeal by implication both the judgment lien statute and the execution statute. It would be necessary to imply a legislative

intention that in circumstances such as are here present a judgment becomes a lien against real property with which the judgment debtor had parted prior to its rendition, and that such judgment may be satisfied out of real property which did not belong to the judgment debtor when the judgment was docketed in the county nor at any time thereafter, but at some previous time. It may be conceded, as counsel for the appellant argues, that in all other instances the judgment lien and execution statutes would be unaffected in their operation; but, since the statutes as they read are intended to be exclusive, since under their provisions no judgment becomes a lien against a debtor's real property except as stated in § 6-801, and no writ of execution is authorized unless it complies substantially with § 6-1102, Subd. 1, it follows that under appellant's view a repeal *pro tanto* of both sections has been effected, as well as an amendment thereof.

It is a familiar rule that repeals by implication are not favored. *Noble v. Noble,* 164 Or. 538, 549, 103 P. (2d) 293, and cases there cited. "A repeal by implication", Mr. Justice HARRIS said in *Swensen v. Southern Pacific Co.,* 89 Or. 275, 279, 174 P. 158, "is effected if there be such positive repugnancy between the new and the old enactments that they cannot stand together or be harmonized", but "one statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose." See, to the same effect, *Pacific Elevator Co. v. Portland,* 65 Or. 349, 388, 133 P. 72, 46 L. R. A. (N. S.) 363.

The redemption statute on the one hand, and the judgment lien and execution statutes on the other, do not relate to the same subject and were not enacted for the same purpose. The latter are purely procedural;

the former is concerned with an enumeration of the persons entitled to redeem property sold subject to redemption, and, in addition, is intended to restrict the extent of the right acquired by redemption in the three instances referred to in the proviso. It confers substantive rights, but, so far as the present case is concerned, leaves the restriction unenforceable. It does not deal with judgment liens or writs of execution, nor does it purport to prescribe a procedure by which the holder of a deficiency judgment can levy upon real property redeemed by one to whom such property has been transferred after commencement of a foreclosure suit. So far from amending, by implication or otherwise, the statutes concerning judgment liens and their enforcement by execution, the legislature has simply failed to provide the means by which its intended purpose is to be made effective.

As stated in *Harrell v. Sullivan*, 220 Ind. 108, 40 N. E. (2d) 115, 41 N. E. (2d) 354, 140 A. L. R. 455, a legislative act may be declared invalid if it does not in some manner provide sufficient means whereby it may be executed. See 50 Am. Jur., Statutes, 484, § 472; *In re Di Torio*, (D. C.) 8 Fed. (2d) 279. This principle applies to the statute under consideration in so far as it attempts to limit the right in mortgaged lands redeemed by one not liable on the mortgage debt, who has acquired title to such lands after commencement of the foreclosure suit. To that extent, therefore, the proviso must be declared void.

For the foregoing reasons our former opinion will be set aside and the decree of the Circuit Court recalling the execution affirmed. No costs will be allowed.