On respondents' petition for reconsideration filed February 15, petition for reconsideration allowed; former opinion (94 Or App 355, 765 P2d 1242) withdrawn; affirmed June 14, reconsideration denied August 25, petition for review allowed October 26, 1989 (308 Or 465)

**FRANKLIN et ux,**
*Respondents,*

*v.*

**SPENCER et al,**
*Defendants,*

**HARBER et al,**
*Appellants.*

**HARBER et ux,**
*Appellants,*

*v.*

**FRANKLIN et ux,**
*Respondents.*

(86-1253 and 86-1288; CA A44858)

776 P2d 13

Guy B. Rencher II, P.C., Corvallis, for the petition.

J. Christopher Minor, Newport, for appellant Linzy, *contra.*

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

Edmonds, J., dissenting.

## GRABER, P. J.

Plaintiffs petition for reconsideration of our decision. 94 Or App 355, 765 P2d 1241 (1988). We allow the petition, withdraw our former opinion, and affirm.[1]

Loevitaur owned real property in Lincoln County. In 1970, he mortgaged it to the Walters. In 1981, defendants Harber obtained two judgments against Loevitaur. In August, 1982, defendants Drobnic obtained a judgment against Loevitaur. All three judgments were docketed as provided in ORS 18.320. On December 1, 1981, the Walters filed a civil action to foreclose their mortgage. The Harbers were among the original defendants in the foreclosure action; the Walters added the Drobnics as defendants after learning of their interest.[2] The court entered a judgment on February 18, 1985, foreclosing the mortgage and ordering that the interests of all parties, including the Harbers and the Drobnics, be sold at a sheriff's sale. Defendant Linzy bought the property on April 5, 1985, at the sale. Loevitaur thereafter sold his interest to plaintiffs, who redeemed the property on April 4, 1986.[3] Some time later, Linzy purchased the Drobnics' judgment.

After the redemption, the Harbers levied execution on the property and sought to have defendant Spencer, the Lincoln County sheriff, sell it to satisfy their judgment lien. Plaintiffs then brought this action to enjoin the sale and to declare that the Harbers' and the Drobnics' liens did not revive when plaintiffs, as Loevitaur's grantees, redeemed the property from the sale to Linzy. The trial court granted the injunction. The Harbers and Linzy appeal. In our former opinion, we held that the liens did revive and that the Harbers and Linzy could execute on them. We are now persuaded that that holding conflicts with the controlling Supreme Court cases and is, therefore, incorrect.

In our former opinion, we concluded that, under ORS

---

[1] In *Harber v. Franklin,* trial court number 86-1288, appellants assigned no errors. We therefore affirm.

[2] In our former opinion, we said that the Drobnics were not parties to the foreclosure action and that they did not obtain their judgment until after the foreclosure sale. Those statements were incorrect.

[3] When the sheriff's sale in this case took place, ORS 25.560 permitted redemption within one year after the date of the sale. By Or Laws 1985, ch 760, § 2, the redemption period was shortened to 180 days. *See Director of Veterans' Affairs v. Peterson,* 94 Or App 314, 766 P2d 386 (1988), *rev allowed* 307 Or 514 (1989).

18.350(1), the judgments against Loevitaur became liens on the property when they were entered and would remain liens on his interest in it until the redemption period expired and his interest was entirely divested. Under ORS 23.530(1), plaintiffs could receive no greater title when they redeemed than Loevitaur would have received, had he redeemed. 94 Or App at 358-59. We held, therefore, that plaintiffs took Loevitaur's interest subject to the judgment liens and that, when plaintiffs redeemed, the entire estate was again subject to those liens.

Our original conclusion would also appear to follow from the rule that a purchaser at a sheriff's sale acquires only an equitable estate in the realty, while the legal title remains in the mortgagor or judgment debtor until the purchaser receives a sheriff's deed when the redemption period ends. *See Maas v. Bolinger,* 261 Or 23, 27, 492 P2d 276 (1971); *Kaston v. Storey,* 47 Or 150, 80 P 217 (1905). From that rule, it would seem that the mortgagor's legal title remains encumbered by the judgment liens after the sale and that those liens reattach to the entire estate when the purchaser's equitable interest terminates, as by a redemption, before it ripens into legal title. *But see Call v. Jeremiah,* 246 Or 568, 574 n 3, 425 P2d 502 (1967). However, a reexamination of the relevant Supreme Court cases convinces us that that court has reached a contrary conclusion.

In *Williams v. Wilson,* 42 Or 299, 70 P 1031 (1902), the owner of the property mortgaged it; thereafter, several judgments were entered against him. The mortgagee filed a suit to foreclose. The judgment creditors appeared in the suit, asking that their judgments be paid out of the proceeds of the foreclosure sale, and the court so decreed. The purchaser at the sale paid enough to cover all but one of the judgments. After the sale, the plaintiff obtained the mortgagor's interest and redeemed. The defendant, who owned the remaining judgment, then executed on it. The plaintiff brought suit to enjoin the execution sale.[4] The Supreme Court emphasized that the

---

[4] In all of the cases that we discuss, the redemption was by an assignee of the rights of the original owner, rather than by the owner. In 1917, the legislature adopted the predecessor of ORS 23.530, which now provides that an assignee who redeems "shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such * * * judgment." Thus, the fact of an assignment has no direct significance to the revival of the judgment liens. The assignee who

purpose for the statutory requirement that the judgment lien creditor be made a defendant in a foreclosure action is to divest the creditor of any interest in the property. 42 Or at 306. The court described the status of a judgment creditor who is made a party to the foreclosure:

> "If he desires to perpetuate his lien as it pertains to the particular property involved by the suit, it is plain he must set it up; otherwise he must stand in default, and can get nothing. * * * Of what avail would be a decree, if, notwithstanding, the judgment creditor could have execution issue, and sell under his judgment? * * *

> "The clear purpose as well as effect of a foreclosure proceeding under the statute is to conclude all parties to the record, and bind them by the decree. * * * The parties can have no remedy or process to enforce their individual liens as they existed prior to the foreclosure, because it cuts them off, and gives them the process provided for the enforcement of the decree where the priorities are determined and the assets marshaled * * *." 42 Or at 307.

**1, 2.** In short, the Supreme Court held that a judgment creditor who is a party to a foreclosure suit loses the judgment lien on the foreclosed property and must rely instead on the fund created by the foreclosure sale. Later cases have not affected that holding. In *Kaston v. Storey, supra,* the judgment liens attached *after* the foreclosure sale. The court held that those liens revived after the redemption, because the judgment creditors were not, and could not have been, joined in the foreclosure suit and, therefore, could not have participated in the proceeds of the sale. Although the judgments were entered after the sale, they nevertheless became liens on the mortgagor's retained legal title to the property. The redemption defeated the purchaser's inchoate right and restored the title to the same state that it would have had in the absence of a sale. The court distinguished *Williams v. Wilson, supra,* on

---

redeems is in the same position as the assignor would have been if the assignor had redeemed at the time of the assignment. For that reason, we discuss the question of revival from the viewpoint of the mortgagor/judgment debtor rather than of the assignee. In one respect, however, the situations are different. If the mortgagor/judgment debtor redeems, the judgments again attach to the land *as of the date of redemption.* The reason is not that the liens revive as a result of the redemption, but that ORS 18.350 provides that the judgment is a lien on all real property of the judgment debtor in the county where it is entered. Under that statute, the liens attach anew when the judgment debtor regains full title to the land, in the same way that they would attach to any other real property that the debtor acquires.

the ground that, in *Williams,* the judgment creditor had been able to participate in the foreclosure. Nothing in the court's reasoning in *Kaston* is inconsistent with *Williams.*

Two other cases that we discussed in our former opinion also do not support its result. In *Ulrich et al. v. Lincoln Realty Co. et al.,* 180 Or 380, 168 P2d 582, 175 P2d 149 (1947), the mortgagee recovered a deficiency judgment against the mortgagor in the foreclosure proceeding. The court held that that judgment attached at the time of the foreclosure decree. Because the mortgagor had transferred title before then, the judgment never actually attached. Thus, there was nothing to reinstate after the mortgagor's assignee redeemed. 180 Or at 399-400. ORS 18.350(1) does not provide for judgment liens on property that the defendant does not own.

Finally, in *Call v. Jeremiah, supra,* the court held that second mortgagees who had been parties to the foreclosure of the first mortgage could not, after redemption, seek to foreclose their mortgage. The first foreclosure extinguished their mortgage lien. The court did say, in a passage that we quoted in part in our former opinion, that a general lien,

> "not being terminated by a decree or by the sale, continues to encumber the property during the redemption period and a grantee of the debtor takes subject to the encumbrance." 246 Or at 582; *quoted at* 94 Or App at 360.

Our quotation was misleading, because in that portion of the opinion the court was discussing the effect of an execution on a judgment, not of a mortgage foreclosure. In an execution, unlike a mortgage foreclosure, there is no general judgment that cuts off the other liens or establishes priorities. For that reason, the lien of a judgment will continue to encumber the legal title in the judgment debtor after the sale and will affect the entire title in the event of redemption. That reasoning has nothing to do with the revival of a judgment lien that has been expressly terminated as part of the foreclosure of a mortgage.

The dissent argues that ORS 23.530(1) overruled *Williams v. Wilson, supra.* That statute simply provides that the assignee of a right of redemption has no greater rights after redemption than would the assignor. The statute has nothing to do with *Williams.* Perhaps that is why the Supreme Court has continued to treat *Williams* as good law since the adoption of ORS 23.530. *See, e.g., Call v. Jeremiah, supra,* 246

Or at 573 n 2; *Ulrich et al. v. Lincoln Realty Co. et al., supra,* 180 Or at 386, 399. Although the judgment lien will reattach if the assignor redeems, that will be a *new* lien as the result of ORS 18.350. That is, the *assignor* did not have what the dissent assumes that he had, because there is no lien attached to the right of redemption itself. *See* note 4, *supra.* When the assignee took the title, there was no lien attached to it. The judgment lienors must be content with *one* sale of the property at its full value. That sale clears the legal title of the liens of all persons who were made parties to the foreclosure action, and a later assignment of the legal title to a third party does not revive those liens.

The Harbers and the Drobnics were parties to the mortgage foreclosure action. The judgment in that action determined their rights in the property and gave them priorities for sharing in the proceeds of the sale. Their liens were inferior to the mortgage, and what they received, therefore, was all that they could claim. The land was not a miraculous pitcher, able to pour forth money from sale after sale until all claims against its owner were paid. *See Call v. Jeremiah, supra,* 246 Or at 578. Rather, as a result of the mortgage foreclosure, it was available for one sale and, thus, it was in the interest of the other lienholders to ensure that that sale would be at a price close to the full value of the land. *See Willis v. Miller,* 23 Or 352, 362, 31 P 827 (1893). If that value was insufficient to pay the Harbers' and the Drobnics' liens, they lost nothing that they actually had; they cannot get more from the land than was in it. The trial court correctly enjoined the execution sale and declared the rights of the parties.

Petition for reconsideration allowed; former opinion withdrawn; affirmed.

**EDMONDS, J.,** dissenting.

The majority ignores the effect of ORS 23.530(1)[1] and

---

[1] ORS 23.530 states:

"Property sold subject to redemption, as provided in ORS 23.520, or any part thereof separately sold, may be redeemed by the following persons:

"(1) The mortgagor or judgment debtor whose right and title were sold, or the heir, devisee or grantee of the mortgagor or judgment debtor, who has acquired, by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the whole or any part of the property separately sold; provided, that in the event redemption is made by anyone acquiring the legal title after

instead relies on *Williams v. Wilson,* 42 Or 299, 70 P 1031 (1902), which was decided before the enactment of ORS 23.530. The right to redeem is wholly defined by statute. *First Federal v. Gruber,* 290 Or 53, 57, 618 P2d 1265 (1980); *Stamate v. Peterson,* 250 Or 532, 533, 444 P2d 30 (1968). Notwithstanding plaintiffs' argument, which the majority appears to adopt, that the proviso portion of ORS 23.530(1) does not apply to mortgages, and that *Williams* is still a binding precedent, I would hold that the outcome of this case is controlled by ORS 23.530(1).

*Williams* held that a mortgage foreclosure is an *in rem* proceeding that adjudicates the status of all liens, whether mortgage or judgment liens, against a parcel of real property. Under *Williams,* a mortgage foreclosure does not affect the vitality of the *in personam* judgment, which remains in effect and which is a potential source for a lien, should the judgment debtor acquire any real property interest subsequent to the judgment of foreclosure.

Subsequent to *Williams,* the legislature enacted ORS 23.530(1). Because it is clear and unambiguous, it must be applied according to its plain meaning. *See Satterfield v. Satterfield,* 292 Or 780, 782, 643 P2d 336 (1982).

The statute provides, in relevant part:

"[I]n the event redemption is made by anyone acquiring the legal title after attachment, or after a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such attachment or judgment."

The clear, unambiguous meaning of that language is that a judgment lien that has previously been discharged by a judgment of foreclosure is reinstated by operation of law when the judgment debtor or the judgment debtor's assignee exercises the right of redemption. ORS 23.530(1) avoids, unlike the majority opinion, the potential of a judgment debtor nullifying

---

attachment, or after a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such attachment or judgment.

"(2) A creditor having a lien by judgment, decree or mortgage on any portion of the property, or any portion of any part thereof separately sold, subsequent in time to that on which the property was sold. Such creditors, after having redeemed the property, are to be termed redemptioners."

the effect of a judgment lien by conveying the right of redemption.

Plaintiffs rely on *Ulrich v. Lincoln Realty Co.,* 180 Or 380, 168 P2d 582, 175 P2d 149 (1947), and a 1953 amendment to ORS 23.530(1) as support for their argument that the proviso portion of ORS 23.530(1) does not apply to mortgages. In *Ulrich,* the mortgagee recovered a deficiency judgment against the mortgagor, who had conveyed the property before the foreclosure judgment. The mortgagor's assignee redeemed. The court held that, because the judgment only became a lien on the day of docketing and because at that time title to the mortgaged property was held by the assignee, the judgment lien did not attach to the property. *Ulrich* does *not* hold that the predecessor to ORS 23.530(1) does not apply to mortgages but, rather, that, because the mortgagor transferred title before the judgment attached, the statute is inapplicable.

In the codification of Oregon Revised Statutes in 1953, the legislature deleted the phrase "or after the institution of a suit to foreclose a mortgage or lien," from the statute. Before the amendment, it read, in relevant part:

> "[I]n the event redemption is made by anyone acquiring the legal title after attachment, or after the institution of suit to foreclose a mortgage or lien, or after a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such attachment or judgment or the institution of such suit." OCLA § 6-1602.

Plaintiffs' argument that the proviso clause of ORS 23.530(1) does not pertain to mortgage foreclosure actions is inconsistent with the preceding portion of subsection (1) and with subsection (2), which both specifically refer to redemption rights arising from a mortgage. It is an axiom of statutory construction that, in discerning legislative intent, a statute should be construed to give consistent effect to every word, phrase, sentence and section. *Thompson v. IDS Life Ins. Co.,* 274 Or 649, 653, 549 P2d 510 (1976). It is noteworthy that the 1953 amendment removed not only the words "suit to foreclose a mortgage," but also the words "or lien." By the amendment, the legislature was eliminating surplusage, because the remaining phrase, "acquiring the legal title after attachment,"

refers to the "mortgagor" mentioned in the first sentence of the subsection.[2]

In summary, I would hold that ORS 23.530(1) has legislatively overruled *Williams* and that plaintiffs' interest in the real property at issue here can be no greater than the interest held by their grantor. The judgment liens held by defendants continued to attach to any interest owned by Loevitaur, including his redemption rights. The foreclosure only had the effect of eliminating the mortgage lien and the judgment liens against the fee title. When Loevitaur conveyed his right of redemption to plaintiffs, that right was subject to defendants' judgment liens. Plaintiffs could not have received any greater interest than Loevitaur could convey.

---

[2] There is no legislative history available regarding the 1953 amendment.