**In re Robert S. SEIDEL, Charlotte A. Baggerman, Debtors.**

**In re Nazih I. GIRGIS Lillian B. Girgis, Debtors.**

**Bankruptcy Nos. 383–00235, 383–00892.**

United States Bankruptcy Court, D. Oregon.

June 10, 1983.

Magar E. Magar, Portland, Or., for debtors.

Timothy Vanagas and Joy Abele, Portland, Or., for claimants.

### MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

Both of the above cases present the same legal question. In each case the debtors have filed a petition for relief under chapter 13 of 11 U.S.C. In each case the final

"balloon" payment upon a contract or mortgage secured solely by the principal residence of the debtors had become due prior to the filing of the petition in bankruptcy. The debtors in each case have filed chapter 13 plans calling for an extension of time within which to pay monthly installments and the balloon payment over a period of time extending beyond the final maturity date provided in the contract or mortgage. In each case the affected creditor has objected to confirmation of the plan.

In the case filed by Seidel and Baggerman the debtors are represented by Magar E. Magar and the affected creditor is represented by Timothy J. Vanagas. In the case filed by Girgis the debtors are represented by Magar E. Magar and the affected creditors are represented by Joy D. Abele.

11 U.S.C. § 1322 provides in relevant part as follows:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

"(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

"(3) provide for the curing or waiving of any default;

\* \* \* \* \* \*

"(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

The parties cite two cases thought to be controlling. One is *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982) and the other is *In re Fontaine*, 27 B.R. 614 (9th Cir. Appellate Panel, 1982). *Fontaine* deals with the same question here involved. *Taddeo*, although not determinative of the present question, is nevertheless instructive.

■ *Fontaine* reaches the correct result by holding that § 1322(b)(5) concerns only curing of defaults on "long term debt" as defined therein as one "on which the last payment is due after the date on which final payment under the plan is due." *Fontaine* should not, however, be understood to hold that an agreement providing for a final payment in the nature of a balloon payment may not be a long term debt nor that § 1322(b)(5) cannot be utilized where such a balloon payment has not yet become due at the time of the filing of the petition in bankruptcy. Whether a debtor's plan which attempts to utilize § 1322(b)(5), can be confirmed depends on whether or not the plan attempts to modify the terms of a security agreement as well as cure prepetition defaults.

*Taddeo* correctly distinguishes the curing of a default from a modification of the agreement.

"When Congress empowered Chapter 13 debtors to "cure defaults", we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code. Under § 365(b), the trustee may assume executory contracts and unexpired leases only if he cures defaults—but the cure need address only the individual event of default, thereby repealing the contractual consequences. \* \* \*." *Taddeo, supra*, pp. 26 and 27.

"Secondly, we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or

"curing defaults and maintaining payments" under (b)(5) to be *modifications* of claims." *Taddeo, supra* p. 27.

"Testimony submitted on behalf of secured creditors distinguished between modifying a claim (by reducing payments due thereon) and curing a default (and maintaining those payments)." *Taddeo, supra* p. 27

*Taddeo* teaches that an acceleration which occurs by reason of a default in the terms of an agreement, may be de-accelerated under § 1322(b)(5). This section however does not permit a modification of the agreement. A provision in a chapter 13 plan which attempted to reduce the installments due in the future or extend the final maturity of the debt would amount to an attempt to modify the agreement.

 Under the literal terms of subsection (b)(5) the debtor may cure a default and maintain payments only when the last payment due under the agreement is due after the date on which the final payment under the plan is due. Thus where the final payment under the agreement without acceleration, has become due prior to the petition in bankruptcy, the debtor is not permitted to cure a default and *maintain payments.* In such circumstances there are no payments to maintain.

 On the other hand, the fact that an agreement calls for a balloon payment as the final installment upon a debt does not disqualify a debtor from utilizing § 1322(b)(5), provided that the balloon payment has not yet become due. The plan must however, in addition to providing for the cure of any prepetition defaults within a reasonable time, provide for maintenance of payments, without acceleration, as provided in the agreement. The debtor cannot modify the agreement by extending the final maturity date. If the final balloon payment, for example, will become due within one year of the date of the filing of the bankruptcy petition, the plan may provide for curing of prepetition defaults but must also provide maintenance of future payments as provided in the agreement including the final balloon payment on its due

date. Any attempt to extend the final maturity date provided in the agreement would be an attempt to modify the agreement.

 Since the chapter 13 plan in each of the present cases attempts to extend the time for making of the final installment due under the terms of the security agreement, the plans do not comply with the terms of § 1322(b)(5) and therefore cannot be confirmed.