**In re Charles M. HURT, Peggy R. Hurt, Debtors.**

**Bankruptcy No. 391–35495–H13.**

United States Bankruptcy Court, D. Oregon.

Feb. 11, 1992.

Daniel Rosenhouse, Portland, Or., for creditor.

Willis Anderson, Portland, Oregon, for debtor.

Robert W. Myers, Portland, Or., trustee.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon an objection by the Oregon Department of Veterans' Affairs ("ODVA") to confirmation of the debtors' proposed plan. The debtors are represented by Willis Anderson and ODVA is represented by Daniel Rosenhouse, both of Portland, Oregon.

The relevant facts are not disputed. ODVA held a note secured by a mortgage against the debtor's principal residence. The mortgage was judicially foreclosed by a "Money Judgment and Decree of Foreclosure." Before the sheriff's sale, the debtors filed a chapter 13 petition for relief.

The debtors' plan proposes to restore the debtor's preforeclosure interest in the property by curing the pre-petition default during the life of the plan while maintaining the regular monthly payments required under the note. ODVA objects on the ground that the debtors have no right to "cure" under 11 U.S.C. § 1322(b)(5).[1]

██ ODVA argues that there must be a presently existing contractual relationship under state law at the time the bankruptcy petition is filed in order for a debtor to be able to cure a default in the performance of that contract. ODVA points out that the foreclosure decree was entered before the bankruptcy petition was filed and that, under state law, the decree terminated the contractual relationship between the debt-

ors and ODVA. ODVA cites *In re Seidel*, 752 F.2d 1382 (9th Cir.1985) and *In re Braker*, 125 B.R. 798 (9th Cir.BAP 1991) in support of its position.

In *Braker*, the Bankruptcy Appellate Panel held that a chapter 13 debtor could not restore his pre-foreclosure interest in property after a sale on execution following judicial foreclosure but during the state-law redemption period. The *Braker* court held that the foreclosing creditor in that case had no claim against the debtor after the sale because a deficiency claim was not allowed under applicable law. The court ruled that the debtor could not cure a default on the creditor's "secured claim" under § 1322(b)(5) since there was no claim.

In the case at bar, the sale had not yet occurred when the bankruptcy petition was filed. Thus, ODVA still holds a claim against the debtors by virtue of the note and mortgage or by virtue of the "money judgment" granted in the foreclosure decree. Therefore, *Braker* is distinguishable from the instant case.

ODVA points out that *Braker* also held that a contractual relationship between the mortgagor and mortgagee is necessary in order to cure a default under § 1322(b)(5) and that the contractual relationship in this case was irrevocably extinguished upon the entry of a decree of foreclosure. *Id.* at 800. That holding, however, may be dictum since the court also ruled on the more limited issue of whether the creditor in that case held a claim, as just discussed.

Whether the alternative holding in *Braker* is dictum or not, this court does not agree with it. The *Braker* court cited an Oregon state supreme court case in support of its conclusion that a foreclosure decree extinguishes the contractual relationship. *Id.* at 801 (citing *Call v. Jeremiah*, 246 Or. 568, 571, 425 P.2d 502, 505 (1967)).

---

1. Section 1322(b)(5):
 (b) Subject to subsections (a) and (c) of this section, the plan may—
 (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The Bankruptcy Appellate Panel's conclusion that the contractual relationship was extinguished for purposes of bankruptcy law ignores the Ninth Circuit Court of Appeals rejection of this reasoning in *In re Seidel*, 752 F.2d 1382 (9th Cir.1985). The debtors argued in *Seidel* that state law would treat the foreclosure decree as a conversion of the consensual security interest to a non-consensual judicial lien and that this conversion should control in bankruptcy. The Ninth Circuit rejected that argument and held that a creditor's lien against property retains its character as a consensual "security interest" for purposes of § 1322(b)(2) even though state law would treat the decree of foreclosure as a conversion of the interest.

Part II of the Ninth Circuit's opinion in *Seidel* is entitled: "II. Subsection [1322] (b)(2) governs a security interest even after it has been converted into a judicial lien." The Ninth Circuit also quoted, with approval, the following language from *First Fin. Sav. & Loan Assoc. v. Winkler*, 29 B.R. 771, 775–76 (D.C.N.D.Ill.1983): "[T]he important thing is what in fact secures a creditor's claim, not what legal cloak a creditor may be given to wear." [2] *Seidel* at 1386.

This court agrees with the Ninth Circuit's analysis in *Seidel* to the effect that the form of a creditor's interest should not control over its substance and that state law is not controlling on the issue of the extent of a debtor's federal bankruptcy rights under § 1322(b)(2) or (b)(5).

This court has previously discussed this issue at length and held that where the debtor's chapter 13 petition was filed after the foreclosure sale but during the redemption period, the debtor could restore his pre-foreclosure interest in the property. *In re Ivory*, 32 B.R. 788 (Bankr.D.Or.1983). The analysis in *Ivory* is applicable in this case and the court refers the interested reader to *Ivory* for that analysis. Consistent with *Ivory*, this court rules that a chapter 13 debtor may restore his pre-foreclosure interest in property after a foreclosure decree is entered but before the sale on execution has occurred by providing in a plan for a cure of the event(s) which constituted the default leading to the eventual foreclosure.

---

**2.** In *Seidel*, the debtor argued to the Ninth Circuit Court of Appeals (as the BAP argues in *Braker*) that, under Oregon law, the creditor's consensual security interest under the original contract was converted into a non-consensual judicial lien once the foreclosure decree was entered. Thus, the debtor argued, § 1322(b)(2)'s ban on modification did not apply thereby allowing the debtor to effectively change the maturity date provided in the contract.

This court had previously rejected this same argument made by the debtors *in re Ivory*, 32 B.R. 788, 793 (Bankr.Or.1983). The Ninth Circuit also rejected this argument in *Seidel* and cited *Ivory* with approval on this issue. *Seidel* at 1387. As stated in the main text of the present opinion, the Ninth Circuit held that the creditor's claim retained its character as a consensual security interest, i.e., a contract, despite contrary state law. *Seidel* at 1386. Thus, the Ninth Circuit has already rejected the BAP's analysis of this issue.

The Bankruptcy Appellate Panel quotes the following from *Seidel*: "We hold ... that the 'cure' provisions of subsection (b)(3) and (b)(5) are inapplicable when a debt has reached its maturity date in the absence of acceleration, prior to the filing of the Chapter 13 petition." *Braker* at 801 (quoting from *Seidel* at 1383.)

It may be that the Ninth Circuit's use of the term "inapplicable" in *Seidel* was imprecise. The precise meaning of the quoted language from *Seidel* concerning the "inapplicability" of the "cure" provisions may be gleaned from an earlier part of the *Seidel* opinion. The Ninth Circuit seemed to recognize, at least for the sake of argument, the potential applicability of "cure" in this context but noted that " 'cure' ... cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable." *Seidel*, at 1386. Thus, if a "cure" accomplished nothing, it would be "unavailing," rather than "inapplicable."

Whatever the court meant in using the term "inapplicable", it does not follow from this language that the "cure" provisions are inapplicable when a debt has *not* reached its maturity date in the absence of acceleration prior to the filing of the Chapter 13 petition.

In this case, application of the *Seidel—Ivory* analysis that rejects the argument that the creditor's security interest has been converted to a judicial lien happens to support the debtor's position rather than the creditor's positions, as it did in *Seidel* and *Ivory*. Obviously, the application of this analysis should not depend upon whether to do so would benefit the debtor rather than the creditor.

The debtors' pre-foreclosure interest in the property was created, not by a contract with this creditor but, by a deed from the prior owner of the property. This deed gave the debtors a complete "bundle of sticks" representing fee title to the property. Under Oregon law, one of those sticks that the debtors acquired was the right to require a satisfaction of the mortgage upon payment in full of the amount due either prior to or subsequent to a decree of foreclosure and prior to a sale on foreclosure. Another one of those sticks was the right to redeem the property should it ever be sold upon execution by a foreclosing creditor. ORS 88.080 and 23.410 to 23.600. The right to require a satisfaction upon payment of full of the amount due and thereby avoid a foreclosure sale and the right to redeem following a foreclosure sale are rights which can only be exercised by the debtors or the debtors' assignor. No stranger to the title can acquire the debtor's interest in the property by payment of the debt before the foreclosure sale nor by redemption after the sale. These rights are rights of ownership which are in no way dependent upon the existence of a contract. In fact there need not be any prejudgment contractual relationship between the judgment creditor and the judgment debtor in order for there to be a right of redemption. The judgment could be one based in tort. See ORS 23.410–600.

The debtors' pre-foreclosure interest in the property was affected by the terms of the note and mortgage with ODVA. To continue the analogy, some of the sticks were transferred to ODVA by virtue of the mortgage. After the debtors defaulted and ODVA foreclosed, the debtors retained two of the sticks mentioned above—the right to require a satisfaction upon payment of the debt and their statutory right of redemption.

Since the debtors had an interest in the property at the time the petition in bankruptcy was filed, the bankruptcy estate succeeded to that interest by virtue of § 541(a)(1). Thereafter, the estate's, the debtors' and the creditors' rights with respect to that property are controlled by the Bankruptcy Code. Section 1322(b)(5) allows the debtors to propose a plan that will maintain payments under the note and mortgage and cure "any default" in the obligation that was secured by the property in question. By curing their default and maintaining payments, the debtors' can restore their interest in the property to its pre-default status.

The *Braker* court focused on the presence or absence of a contractual relationship between the debtor and creditor under state law at the time the petition was filed. As previously stated, however, the debtors' interest in the property was not created by the contract. This court believes the focus should be on the presence or absence of an interest in property that becomes property of the estate under § 541. If the estate has an interest in the property, the Code, rather than state law, defines the rights of the parties with respect to the property.

The court in *Braker* stated: "The code neither creates nor enhances the rights a debtor brings into the bankruptcy estate." *Braker* at 801. It may be that the *Braker* court intended to say that the Code does not create interests in property. While the Code may not create interests in property, one need only consider 11 U.S.C. § 547 ("Preferences") to realize that rights are indeed created in bankruptcy. The preference provision is an example of the Code creating a right not available under state law, that is, the right to recover for the benefit of the estate a transfer that is unassailable under state law.[3]

---

**3.** The statement that pre-bankruptcy rights are neither created nor enhanced by the Code ignores many provisions of bankruptcy law that allow debtors to:

1. Cure defaults, see § 1123(a)(5)(G); § 1222(b)(3); § 1322(b)(3);
2. Modify agreements, see § 1123(a)(5)(E), (F) and (H); § 1222(b)(2) and (5); § 1322(b)(2) and (5);
3. Reject contracts, see § 365;
4. Extend statutes of limitation, see § 108;
5. Retain property, see § 1123(a)(5)(A); § 1207(b); § 1222(b)(10); § 1306(b); § 1322(B)(9); and
6. Automatically restrain creditors, see § 362. All these rights exist under bankruptcy law regardless of the provisions of state law.

To the extent that the debtor's or trustee's rights are created or enhanced under the federal Bankruptcy Code, this is admittedly done at the expense of certain creditors' or other interested parties' inferior state law rights. Bankruptcy law limits certain creditors' state law rights, however, not only for the benefit of the debtor, but also for the benefit of the other creditors. It is the two goals of providing a fresh start to the debtor and equality of treatment to creditors that underlies all aspects of the Code. The achievement of these goals often alters the result that a creditor could expect under state law.

With these goals in mind, it is not surprising that, once an interest in property is brought into a bankruptcy estate, the extent of that interest is determined according to the provisions of federal bankruptcy law rather than state law. Thus, as previously stated, once property comes into the estate, § 1322(b)(5) allows a debtor to cure "any default" in the performance of an obligation that was secured by the property in question and maintain payments while the case is pending.[4] The effect of so doing is to restore the debtor's interest in the property to its status immediately before the default occurred. Restoration of an interest created under state law does not constitute creation of that interest under federal law.

While the Code alters the result that a creditor could expect under state law, it is worthwhile to note that the Code also protects the creditor's economic interests. See, for example, 11 U.S.C. § 361, § 362, § 1307, § 1322 and § 1325.

ODVA's objection will be overruled and the court will enter an order confirming the debtors' plan.

---

4. This court recognizes that it would be absurd to hold that a debtor could cure "any" default, regardless of when it occurred. The limit on the debtor's ability to cure "any" default is the requirement that the debtor have an interest in the property that was affected by the contract in question. This limit follows from § 541 which defines the extent of property of the estate. Thus, a debtor cannot cure a default in an executory contract or lease that has been terminated before the petition was filed if the termination left the debtor with no interest in the property at the time the petition was filed.