**In re Charles M. HURT and Peggy R. Hurt, Debtors.**

**STATE OF OREGON, acting by and through the DIRECTOR OF the DEPARTMENT OF VETERANS' AFFAIRS, Appellant,**

**v.**

**Charles M. HURT and Peggy R. Hurt, Appellees.**

**BAP No. OR–92–1258–ARJ.**

**Bankruptcy No. 391–35495 H13.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted on July 24, 1992.

Memorandum Filed May 5, 1993.

Opinion Filed Sept. 21, 1993.[1]

1. The Memorandum decision filed on May 5, 1993 is redesignated as an authored Opinion.

Daniel H. Rosenhouse, Portland, OR, for State of Or.

Before ASHLAND, RUSSELL, and JONES, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The State of Oregon appeals the bankruptcy court's order confirming the debtors' Chapter 13 plan. *In re Hurt,* 136 B.R. 859 (Bankr.D.Or.1992). The plan attempted to "cure" a default on a mortgage after foreclosure judgment, but prior to the foreclosure sale. We affirm.

### STATEMENT OF THE FACTS

The relevant facts are not in dispute. The Oregon Department of Veterans' Affairs held a note secured by a mortgage against the principal residence of the debtors Charles and Peggy Hurt. The mortgage was judicially foreclosed on June 14, 1991. Prior to the sheriff's sale, the Hurts filed a Chapter 13 petition.

The Hurts' plan proposed curing the prepetition default during the life of the plan while maintaining the regular monthly payments under the original note. The Department of Veterans' Affairs objected to the terms of the plan maintaining that the Hurts did not have a right to cure under 11 U.S.C. § 1322(b)(5). The bankruptcy court overruled the Veterans' objection stating that "§ 1322(b)(5) allows a debtor to cure 'any default' in the performance of an obli-

gation that was secured by the property in question and maintain payments while the case is pending." *In re Hurt,* 136 B.R. 859, 861 (Bankr.D.Or.1992). This appeal followed.

### ISSUES

Whether 11 U.S.C. § 1322(b)(5) permits the debtor to cure a default on a debt secured by the debtors' principal residence following the entry of the foreclosure judgment but prior to the foreclosure sale.

### STANDARD OF REVIEW

The interpretation of 11 U.S.C. § 1322(b)(5) is a question of law reviewed de novo. *In re Quintana,* 915 F.2d 513, 515 (9th Cir.1990); *In re Acequia, Inc.,* 787 F.2d 1352, 1357 (9th Cir.1986); *In re Braker,* 125 B.R. 798, 799 (9th Cir. BAP 1991).

### DISCUSSION

**I. The Circuit Courts Have Not Reached An Identifiable Consensus Interpreting 11 U.S.C. § 1322(b)(5)**

Section 1322(b)(5) enables a debtor to cure a default on a home mortgage through a Chapter 13 plan. Section 1322(b)(5) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(5). However, § 1322(b)(5) does not specify when this right to cure terminates: (1) at the time of the contractual acceleration; (2) upon entry of foreclosure judgment; (3) at the time of the foreclosure sale; or (4) upon expiration of the redemption period. *See, In re Roach,* 824 F.2d 1370, 1372 (3d Cir.1987).

All of the circuit courts that have addressed the cure provisions in § 1322(b)(5) agree that the default may be cured after the contractual acceleration of the full mortgage. *See, In re Thompson,* 894 F.2d 1227, 1230 (10th Cir.1990); *Justice v. Valley Nat. Bank,* 849 F.2d 1078 (8th Cir. 1988); *In re Roach,* 824 F.2d 1370, 1374–77 (3d Cir.1987); *In re Metz,* 820 F.2d 1495, 1497 (9th Cir.1987); *In re Glenn,* 760 F.2d 1428, 1431–36 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Clark,* 738 F.2d 869, 874 (7th Cir.1984); *Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 237 (5th Cir.1984) (en banc) *vacating* 718 F.2d 694 (5th Cir. 1983); *In re Taddeo,* 685 F.2d 24, 26–27 (2d Cir.1982). On the other hand, none of the circuit courts have held that a home mortgage default may be cured during a redemption period following a foreclosure sale. *Contra, In re Ivory,* 32 B.R. 788 (Bankr.D.Or.1983). Between these polar points on the time line, however, there is substantial disparity in theory among the circuit courts attempting to delineate a definitive cutoff point for a cure. Three theories have evolved to pin point exactly when a debtor may no longer cure: (1) the pragmatic theory; (2) the state law theories; and (3) the estate theory.

### A. *The Pragmatic Theory*

The "pragmatic" theory suggests that the foreclosure sale is the cutoff date for § 1322(b)(5) cure provisions. *In re Glenn,* 760 F.2d 1428, 1435 (6th Cir.1985). The Sixth Circuit adopted the pragmatic time period primarily because it "works the least violence to the competing concerns evident in the language of the statute...." *Glenn,* 760 F.2d at 1435. The court's frustration in attempting to establish a specific cutoff point is evident in the following passage:

> We despair of finding any clear-cut statutory language or legislative history that points unerringly to a construction of the statute that is free from challenge. Each of the cases and each result

reached therein is subject to some objection either in theory or in practice.

*Glenn,* 760 F.2d at 1435.

### B. *The State Law Theory*

The "state law" theory looks at a specific state's statute to delineate the cutoff point for cure. This theory, however, is divided into two subcategories: the title/lien theory and the mortgage contract theory.

#### 1. The Title/Lien Theory

The Seventh Circuit looked at state law to determine whether or not the mortgagor retained *legal title* in the property after filing the bankruptcy petition, such that the property was part of the estate under 11 U.S.C. §§ 541 and 1306. *In re Clark,* 738 F.2d 869, 871 (7th Cir.1984). In *Clark,* the debtor attempted to cure after foreclosure judgment, but before the foreclosure sale. The court determined that "the power to 'cure' a default provided by § 1322(b)(5) permits a debtor to de-accelerate the payments under a note secured by a residential property mortgage," even though a judgment of foreclosure had been entered on the property. *Clark,* 738 F.2d at 874. The court noted that under Wisconsin law the homeowners retained an interest in the property after the judgment of foreclosure is entered which they could seek to protect as part of the bankruptcy. *Clark,* 738 F.2d at 871.

Within a year after *Clark,* the Seventh Circuit decided a case based on similar facts. *See, In re Tynan,* 773 F.2d 177 (7th Cir.1985). However, in *Tynan* the debtor was an Illinois resident attempting to cure *after* the foreclosure sale occurred and during the period of redemption. The court held that "this section [1322(b)(5)] is inapplicable because there was no default to cure after judgement of foreclosure was entered." *Tynan,* 773 F.2d at 178. The *Tynan* court apparently overstated its intentions by stating that the cutoff point for cure is at foreclosure judgment. *See, In re Kohler,* 107 B.R. 167, 169 n. 2 (Bankr. S.D.Ill.1989) (*Tynan* failed to address the lien/title issue and it predated the passage of the Illinois Mortgage Foreclosure Law).

Prior to the enactment of the new Illinois Mortgage Foreclosure Law, the Supreme Court of Illinois established that the title to the property remained with the mortgagor after the foreclosure of a mortgage until the expiration of the redemption period. *Kling v. Ghilarducci*, 3 Ill.2d 454, 455, 121 N.E.2d 752, 756 (1954). More recently, the Illinois legislature enacted a new foreclosure law which affirmed the holding in *Kling*. *See*, Ill.Ann.Stat. ch. 110, paras. 15–1404 & 15–1506(i)(1); *Kohler*, 107 B.R. at 169. Section 15–1404 specifically states that "the interest in the mortgaged real estate of (i) all persons made a party in such foreclosure ... shall be terminated by the *judicial sale* of the real estate...." Ill.Ann.Stat. ch. 110, para. 15–1404.

It is readily apparent that the Seventh Circuit does not establish the cutoff point at the foreclosure judgment. *Tynan* involved a situation that questioned the cure provisions after the sale occurred. It is clear the Seventh Circuit continues to support the proposition originally stated in *Clark* that the debtor's interests, as defined by state law, determine the cutoff point for cure under § 1322(b)(5).

### 2. The Contract Theory

Both the Eighth and Third Circuits have adopted the "mortgage contract" theory. Essentially, this theory states that after a certain point in the foreclosure process, the mortgage contract ceases to exist. Nevertheless, the two circuits disagree on when the contract is extinguished.

The Eighth Circuit determined that the cure provisions "have particular reference to contractual mortgage rights and are not applicable after a foreclosure *sale* has been held." *Justice v. Valley Nat. Bank*, 849 F.2d 1078, 1084 (8th Cir.1988) (emphasis added). The *Justice* court reached its conclusion interpreting analogous "cure" provisions in Chapter 12. The court concluded that "Congress evidenced its intent to provide additional relief for defaulting mortgagors only as long as the contractual relationship continues, and to allow state law to control when the relationship is dissolved." *Justice*, 849 F.2d at 1085. Interpreting South Dakota law, the court found

that the mortgage contract was extinguished after both the foreclosure judgment and the sale. *Justice*, 849 F.2d at 1084 (citing *American Fed. Sav. & Loan Ass'n v. Kass*, 320 N.W.2d 800, 804 (S.D. 1982)).

The Third Circuit determined that the cure provisions expire when the mortgagee obtains a foreclosure *judgment. In re Roach*, 824 F.2d 1370, 1377 (3d Cir.1987). The *Roach* court concluded that "after the entry of a foreclosure judgment, no contractual relationship remains and the mortgagee's rights are those that arise from its judgment." *Roach*, 824 F.2d at 1377. Interpreting New Jersey law, the court found that "the mortgage is merged into final judgment of foreclosure and the mortgage contract is extinguished." *Roach*, 824 F.2d at 1377 (citing *Colonial Bldg. Loan Ass'n v. Mongiello Bros.*, 184 A. 635, 637–38 (N.J.Ch.1936)).

### C. *The Estate Theory*

The Tenth Circuit recently developed the "estate" theory. The estate theory cuts off the debtors right to cure under § 1322(b)(5) at the foreclosure sale. *In re Thompson*, 894 F.2d 1227, 1229–31 (10th Cir.1990). The *Thompson* court began its analysis stating that "[a] more useful starting point would seem to be the concept of property of the bankruptcy estate." *Thompson*, 894 F.2d at 1229 (citing 11 U.S.C. § 541). Sections 541 and 1306 are the logical starting points because "a mortgage debtor must have some legal or equitable interest in property which enters the bankruptcy estate if he hopes to retain it through the bankruptcy cure provisions." *Thompson*, 894 F.2d at 1229 (citing *Clark*, 738 F.2d at 871). However, *Thompson* did not focus on state mortgage law to determine the interests of the debtor in the property. *See*, *Clark*, 738 F.2d at 871 (the Seventh Circuit state-law theory). The *Thompson* court stated that "[t]he right to cure in bankruptcy should resemble its state law analogue, but should not be stifled by archaic property and mortgage law concepts." *Thompson*, 894 F.2d at 1231.

Apparently all of the states permit equitable redemption of property up until the

foreclosure sale and approximately half of the states permit statutory redemption after the foreclosure sale. *Thompson*, 894 F.2d at 1230 (citing *Real Estate Finance Law* § 7.1 at 478–479). The *Thompson* court concluded that these redemptive interests were part of the bankruptcy estate stating that "[t]he concept of property of the bankruptcy estate is broad enough to include statutory or equitable rights of redemption." *Thompson*, 894 F.2d at 1230 (citing 4 *Collier on Bankruptcy*, ¶ 541.-07[3]).

Although this analysis implies that *Thompson* supports the right to cure beyond the foreclosure sale, the court nevertheless established the foreclosure sale as the cutoff point for two primary reasons. *Thompson*, 894 F.2d at 1230–1231. First, the foreclosure sale introduces a third party into the equation. Specifically, the good faith purchaser at the foreclosure sale. "Purchase by an independent third party at a foreclosure sale raises enough additional concerns to justify ending the right to cure in bankruptcy at that point." *Thompson*, 894 F.2d at 1231. Second, the court focused on the distinction between equitable redemption and statutory redemption. The court stated that:

> The mortgagor's equitable period of redemption before sale exists to provide the debtor sufficient time to attempt to refinance the property which appears to be the same goal as the bankruptcy right to cure. While an opportunity to refinance is also one of the purposes of statutory redemption, the principal objective of statutory redemption is to assure that the foreclosure sale brings a fair price.

*Thompson*, 894 F.2d at 1230 (citations omitted). As a result, the inherent philosophy separating the redemption periods requires the right to cure to stop at the foreclosure sale.

## II. The Estate Theory Is the Most Viable Theory Providing a Definitive Cut Off That Both Debtors and Creditors May Rely Upon

There are four potential cutoff points for "cure" under 11 U.S.C. § 1322(b)(5): (1) at the time of the contractual acceleration; (2) upon entry of foreclosure judgment; (3) at the time of the foreclosure sale; or (4) upon expiration of the redemption period. The Ninth Circuit Appellate Courts have addressed the potential to "cure" within the context of two of the four periods. In *In re Metz*, the court addressed cutoff option # 1 stating that the debtor *has the right* to cure the prepetition acceleration of a home mortgage debt triggered by default. *In re Metz*, 820 F.2d 1495, 1497 (9th Cir.1987). In *In re Braker*, the Bankruptcy Appellate Panel addressed cutoff option # 4 stating that the debtor *does not have the right* to cure after a prepetition foreclosure sale. *In re Braker*, 125 B.R. 798, 801 (9th Cir. BAP 1991). In this appeal, we are asked to address an issue of first impression: whether the right to cure under § 1322(b)(5) is extinguished at foreclosure judgment (option # 2) or at the foreclosure sale (option # 3).

## A. The Braker Panel Did Not Adopt a Definitive Theory For Addressing the § 1322 Cure After the Entry of Foreclosure Judgment but Prior to the Foreclosure Sale

The Oregon Department of Veterans' Affairs maintains that the *Braker* panel adopted the contract theory and advanced the proposition that the right to cure is extinguished at the foreclosure judgment. We disagree. The *Braker* opinion does not establish the foreclosure judgment as the cutoff point for cure. *Braker* merely states that a § 1322(b)(5) cure does not exist after the foreclosure sale. In *Braker*, the debtor attempted to cure under § 1322(b)(5) after both foreclosure judgment and foreclosure sale. The bankruptcy court approved the plan and the Oregon Department of Veterans' Affairs appealed. The *Braker* panel subsequently reversed stating that "[a] pre-petition *foreclosure sale* prevents the application of section 1322(b)(5) to cure the antecedent default." *Braker*, 125 B.R. at 801 (emphasis added).

In reaching its conclusion, the *Braker* panel analyzed several circuit court cases:

(1) *Justice v. Valley Nat. Bank,* 849 F.2d 1078 (8th Cir.1988); (2) *In re Roach,* 824 F.2d 1370, 1374–77 (3d Cir.1987); (3) *In re Glenn,* 760 F.2d 1428, 1431–36 (6th Cir. 1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); and (4) *In re Tynan,* 773 F.2d 177 (7th Cir.1985). The panel then stated that "[t]hose circuit courts held that a foreclosure sale extinguishes the contractual relationship between the debtor and the lender." *Braker,* 125 B.R. at 800. Although the phrase "contractual relationship" implies that *Braker* adopted the contractual theory for cure, we find that *Braker* merely used the contract theory as one alternative to support the limited proposition that the right to cure is extinguished after the foreclosure sale. This proposition is clear after evaluating the divergent theories advanced by the circuit court cases cited by *Braker.*

First, the court in *In re Glenn* adopted the "pragmatic theory" which cuts off the right to cure at the foreclosure sale because it worked the least violence to the competing concerns in the language of § 1322(b)(5). *See, Glenn,* 760 F.2d at 1435. Second, the *Tynan* court did not advance a theory. The court merely stated that § 1322(b)(5) was inapplicable because there was no default to cure: the foreclosure sale was already completed. The remaining two cases, *Justice* and *Roach,* adopted the contract theory, but *Justice* extinguished the right to cure at the foreclosure sale, while *Roach* extinguished the right to cure at the foreclosure judgment. *Justice,* 849 F.2d at 1084; *Roach,* 824 F.2d at 1377. Accordingly, we view *Braker's* analysis of the contract theory as one of several theories available to address the limited issue raised in this appeal.

**B.** *The Contract Theory and the Title/Lien Theory May Create Conflicting Cutoff Points for Cure Under § 1322(b)(5)*

The state law theories may create confusion within the circuit. For example, an anomaly exists under Oregon law depending upon which subset of the state law theory a court adopts; the title/lien theory

or the contract theory. The title/lien subset of the "state law" theory looks to state law to determine the scope of the mortgagor's interest. *See, In re Clark,* 738 F.2d 869 (7th Cir.1984). Under Oregon law, a mortgagor retains "legal title" following the foreclosure sale and during the time for redemption. *Franklin v. Spencer,* 309 Or. 476, 483, 789 P.2d 643, 646 (1990).

The contract subset of the "state law" theory looks to state law to determine when the mortgage contract is extinguished. Under Oregon law, an Oregon foreclosure judgment may extinguish the mortgage contract. *Call v. Jeremiah,* 246 Or. 568, 571, 425 P.2d 502, 505 (1967). *Contra, Ulrich v. Lincoln Realty Co.,* 180 Or. 380, 382, 175 P.2d 149, 149 (1946) *setting aside,* 180 Or. 380, 168 P.2d 582 (1946). The contract theory may cut off the cure under state law at the foreclosure judgment, while the title theory may cutoff the cure beyond the foreclosure sale. The potential for the preceding anomaly requires us to reject both subsets of the "state law" theories. A debtor may be able to "cure" at different time intervals depending upon which state law is applied. In the interests of establishing uniformity within the circuit, so that debtors can recognize a specific cutoff point, we find the estate theory offers the most viable alternative to establishing a specific cutoff point for cure under § 1322(b)(5).

**C.** *The Estate Theory is the Most Logical Approach for Establishing A Uniform Point to Cutoff the Cure Under § 1322(b)(5)*

Although the Ninth Circuit has not specifically addressed which test is appropriate, it is apparent that the circuit would adopt an expansive definition of "cure" as opposed to a restrictive definition. The court in *In re Seidel,* stated that " 'the plain meaning of "cure," as used in §§ 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the *status quo ante.*' " *In re Seidel,* 752 F.2d 1382, 1386 (9th Cir.1985) (quoting *Clark,* 738 F.2d at 872; *Taddeo,* 685 F.2d at 26–27). *Black's Law Dictionary* defines *sta-*

*tus quo* as: "the existing state at any given date. *Status quo ante bellum,* the state of things before the war." *Black's Law Dictionary* 1264 (5th ed. 1979). Accordingly, it is apparent that the Ninth Circuit provides for a cure under § 1322(b)(5) to restore the debtor's mortgage to its original state before the default regardless of what action the mortgagee has taken.

Two subsequent Ninth Circuit cases support this proposition. In *In re Metz,* the court stated that:

> while modification of the debt is prohibited, Metz's Chapter 13 plan is a permissible "cure" of a claim because it simply reinstates the original debt after correcting the arrearage. *See, In re Seidel,* 752 F.2d 1382, 1386 (9th Cir.1985) (cure results in reinstatement of the original payment terms of the debt).

*In re Metz,* 820 F.2d 1495, 1497 (9th Cir. 1987). Finally, within a Chapter 11 case, the *Entz–White* court stated that "[i]t is clear that the power to cure under the Bankruptcy Code authorizes a plan to *nullify all consequences of default....*" *In re Entz–White Lumber and Supply,* 850 F.2d 1338, 1342 (9th Cir.1988) (emphasis added).

■ After concluding that the Ninth Circuit would adopt an expansive definition for "cure," the next question we must address concerns at which point on the time line should the expansive right to cure no longer be available to the debtor: (1) foreclosure judgment; (2) foreclosure sale; or (3) the conclusion of the statutory period of redemption. We agree with the majority of circuits that have concluded the foreclosure sale is the correct point to cutoff the right to cure under § 1322(b)(5). *See, Clark,* 738 F.2d at 871 (title–state law theory; foreclosure sale applying Wisconsin law); *Glenn,* 760 F.2d at 1435 (pragmatic theory; foreclosure sale); *Justice,* 849 F.2d at 1084 (contract-state law theory; foreclosure sale applying Iowa law); *Thompson,* 894 F.2d at 1230–31 (estate theory; foreclosure sale). *But see, Roach,* 824 F.2d at 1377 (contract-state law theory; foreclosure judgment applying New Jersey law). However, we do not agree with the analysis developed by several of the circuits. The estate theory developed by the Tenth Circuit in *Thompson* promotes the most logical and reasonable analysis.

■ The concept of property of the estate under §§ 541 and 1306 is the proper starting point to establish uniformity within the circuits. *Thompson,* 894 F.2d at 1229. Section 541 provides that at the commencement of the case, the estate includes "all legal or equitable interests of the debtor in property...." 11 U.S.C. § 541(a)(1). However, a state law evaluation is not necessary to determine the debtor's interest. The conflict in Oregon between the contract theory and the title theory exemplifies the confusion that may result. *See also, Kohler,* 107 B.R. at 168–69 (discussing the differing interpretations of Illinois law). Accordingly, the *Thompson* court looked at the debtor's redemptive rights to create uniformity.

The statutory or equitable rights of redemption are included in the concept of property under § 541. *Thompson,* 894 F.2d at 1230 (citing *Collier on Bankruptcy* ¶ 541.07[3]). "All states apparently permit redemption of mortgaged property, not simply until the date of the foreclosure judgment, but until a foreclosure sale.... About half of the states go beyond that, to allow a statutory period of redemption." *Thompson,* 894 F.2d at 1230 (citing *Real Estate Finance Law* § 7.1, at 478–479).

Although this analysis implies the cure should be available until the conclusion of the statutory redemption period, the cutoff for cure should nevertheless be established at the foreclosure sale. *Thompson,* 894 F.2d at 1230–31. The foreclosure sale introduces a third party when, as here, the property is purchased by someone other than the mortgagee. *See, Thompson,* 894 F.2d at 1230. In addition, the inherent philosophy separating the redemption periods supports the adoption of the foreclosure sale as the cutoff point. "[T]he equitable period of redemption before sale exists to provide the debtor sufficient time to attempt to refinance the property which

appears to be the same goal as the bankruptcy right to cure." *Thompson*, 894 F.2d at 1230 (citations omitted). While "the principle objective of statutory redemption is to assure that the foreclosure sale brings a fair price." *Thompson*, 894 F.2d at 1230 (citations omitted).

## CONCLUSION

The Hurts filed their Chapter 13 after foreclosure judgment, but prior to the foreclosure sale. The Oregon Department of Veterans' Affairs objected to the terms of the Hurts' plan maintaining that there was no right to cure under § 1322(b)(5). The bankruptcy court overruled the Veterans' objection stating that § 1322(b)(5) allows a debtor to cure any default. *In re Hurt*, 136 B.R. 859, 861 (Bankr.D.Or.1992). We affirm the bankruptcy court adopting the estate theory developed by the Tenth Circuit. The estate theory enables a debtor to "cure" under § 1322(b)(5) up to the foreclosure sale. We do not agree with the bankruptcy court's implication that the "cure" under § 1322(b)(5) is available during the statutory period of redemption. The Bankruptcy Appellate Panel in *In re Braker*, specifically stated that the cure under § 1322(b)(5) is not available to a debtor after the foreclosure sale is completed.

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent and would reverse. The Oregon Department of Veterans' Affairs ("ODVA") asserts that § 1322(b)(5) does not provide for the cure and reinstatement of a mortgage note secured by a debtor's primary residence after the issuance of a foreclosure decree. I agree.

Section 1322(b)(5) provides that a Chapter 13 plan may:

Notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. 1322(b)(5).

The Bankruptcy Appellate Panel has previously held that a Chapter 13 debtor could not restore his pre-foreclosure interest in property once the mortgage contract had been extinguished by a decree of foreclosure under Oregon law. *In re Braker*, 125 B.R. 798 (9th Cir. BAP 1991).

The Panel in *Braker* reasoned that the curing of a default under § 1322(b)(5) requires an existing contract: "The circuit courts concluded that the curing of a default under 11 U.S.C. section 1322(b)(5) requires an existing contractual relationship." *Braker* at 800. (The *Braker* Panel referring specifically to: *Justice v. Valley National Bank*, 849 F.2d 1078, 1085 (8th Cir.1988); *In re Mann Farms, Inc.*, 917 F.2d 1210, 1214 (9th Cir.1990); *In re Roach*, 824 F.2d 1370, 1377 (3rd Cir.1987); *In re Glenn*, 760 F.2d 1428, 1442 (6th Cir. 1985), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); and *In re Tynan*, 773 F.2d 177, 178 (7th Cir.1985)).

Referring to those same decisions, the *Braker* Panel stated: "The circuit courts reasoned the need for a contractual relationship from the common meaning of the words 'cure' and 'default.' To have a cure, there must be a default, and to have a default, there must be a contract." *Braker* at 801.

As the bankruptcy court below pointed out, no foreclosure sale has occurred in the facts of this case. Under *Braker*, however, one must come to the same result because the court identified **that it was the decree of foreclosure that was the crucial event in cutting off the debtors' right to cure under § 1322(b)(5):** *"An Oregon decree of foreclosure also extinguishes the mortgage. contract."* *Braker* at 800 (emphasis added) (citing *Call v. Jeremiah*, 246 Or. 568, 571, 425 P.2d 502, 505 (1967)).

The holding in *In re Seidel*, 752 F.2d 1382 (9th Cir.1985) is of no assistance to the debtors. There, the Ninth Circuit affirmed the denial of confirmation of a Chapter 13 plan that proposed to pay off a

mortgage note secured by the debtors' home which had become due, without acceleration, before the filing of the debtors' petition. *Id.* at 1383 (affirming *In re Seidel*, 31 B.R. 262 (Bankr.D.Or.1983)). The Ninth Circuit held that the arrangement contemplated by the plan amounted to an impermissible "modification" of a claim secured by the debtor's principal residence which was specifically prohibited by § 1322(b)(2). *Id.* at 1387.

The contractual relationship in this case has been irrevocably extinguished by the entry of the decree of foreclosure. That foreclosure decree was entered before the debtors' petition was filed. There was no contract remaining to which to apply § 1322(b)(5) to cure at the time of the petition under Oregon law. Under both *Braker* and *Seidel*, § 1322 does not resurrect rights that have terminated under state law. "The cure contemplated by section 1322(b)(5) is a cure that provides both debtor and creditor with the equivalent of their state law rights." *Braker*, at 801; *cf. Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). "The code neither creates nor enhances the rights a debtor brings into the bankruptcy estate." *Braker* at 801 (citing 11 U.S.C. § 541(a)(1)); *In re Kaplan*, 97 B.R. 572, 576 (9th Cir. BAP 1989); *In re Gull Air, Inc.*, 890 F.2d 1255, 1261 (1st Cir.1989).

The majority fails to recognize that § 1322(b)(5) operates against a backdrop of well-developed state law rights. This is why § 1322(b)(5) does not statutorily prescribe a universal cut-off point applicable to all states. The operative event is clearly the decree of foreclosure. This is the holding of *Braker*. It is also what the highest court in the state of Oregon held. *Call v. Jeremiah*, 246 Or. 568, 571, 425 P.2d 502, 505 (1967). That decision was cited and relied upon by the *Braker* Panel. *Braker*, at 800.

In *Call v. Jeremiah*, the Oregon Supreme Court, sitting *en Banc*, clearly stated that the decree of foreclosure was the event that terminated the mortgage contract:

*Ulrich v. Lincoln Realty Co.*, 180 Or. 380, 168 P.2d 582, 175 P.2d 149 (1947), clearly establishes that a decree of foreclosure extinguishes a first mortgage and that when the land is redeemed by the mortgagor or his grantee the mortgage is not revived as to any deficiency on the foreclosure sale.

*Call v. Jeremiah*, 246 Or. at 570, 425 P.2d at 503. The majority gives no deference to state law in deciding when a mortgage contract has been terminated.

I agree that circuit courts have not uniformly decided what point terminates rights of redemption under § 1322(b)(5). I view this as a testament that reasonable minds may differ on this issue. Further, each circuit decision is made against a back-drop of varied state foreclosure laws, ones which may or may not have chosen the foreclosure decree or judgment as their own cut-off point, as the State of Oregon has in this case.

The majority opinion contains the following statements about *Braker:*

Although the phrase "contractual relationship" implies that *Braker* adopted the contractual theory for cure, we find that *Braker* merely used the contract theory as one alternative to support the limited proposition that the right to cure is extinguished after the foreclosure sale. This proposition is clear after evaluating the divergent theories advanced by the circuit court cases cited by *Braker.*

.    .    .    . .    .

Accordingly, we view *Braker's* analysis of the contract theory as one of several theories available to address the limited issue raised in this appeal.

I do not agree with this characterization of the *Braker* decision. *Braker* simply states: that a decree of foreclosure is one event that extinguishes the contract under Oregon law; there was a decree of foreclosure; a contract so terminated before a bankruptcy petition is filed cannot be revived by the cure provision of § 1322(b)(5). *Braker* may not be avoided by minimizing its holding down to an "alternative analy-

sis." The holding of an opinion is not an "alternative analysis."

As the majority readily admits, all of the cited theories are objectionable to someone. The majority quotes the Sixth Circuit's frustration in choosing a cut-off point: "Each of the cases and each result reached therein is subject to some objection either in theory or in practice." Majority, *supra* at 156 (quoting *In re Glenn,* 760 F.2d at 1435). Which theory is least objectionable is a subjective choice. The majority now chooses the "estate theory" as being "the most viable." I believe the correct choice has previously been made by the BAP in *Braker.*

For the above reasons, I respectfully dissent and would reverse.