SHEDD, Circuit Judge,
dissenting:
Anna Litton’s proposed Chapter 13 plan was a modification of Wachovia’s rights, not a simple cure of a default. For this reason, the bankruptcy court was well within its authority to find that Mrs. Litton had violated the terms of the court’s settlement order and to dismiss her Chapter 13 petition. The bankruptcy court (and the district court) properly recognized the crucial fact in this case, that Wachovia’s mortgage had already matured before Mrs. Litton missed the payment called for by the settlement order. Thus, Mrs. Litton’s proposed plan required Wa-chovia to extend the term of its already matured mortgage. This was a modification of Wachovia’s rights, and it was not permissible under the Bankruptcy Code. I respectfully dissent.
I.
Wachovia’s mortgage on Mrs. Litton’s property matured (at the latest) on January 31, 2000. In March 2000, Wachovia entered into a settlement with Mrs. Litton to dispose of her first Chapter 13 case. According to the settlement, the Littons would make payments of $10,000 and $55,000 to Wachovia. If the Littons made these payments by June 30, 2000, then— and only then — -Wachovia would restructure the mortgage, re-amortizing the remaining balance using a 15-year term and the residential mortgage interest rate afforded by Wachovia on June 30, 2000. Under this new arrangement, the Littons would make annual payments of at least $10,000, with the entire obligation to mature by balloon payment on March 3, 2005, or one year after construction of improvements to Exit 17 on Interstate 81, whichever first occurred. The settlement further provided that if the Littons failed to make the scheduled payments by June 30, 2000, then Wachovia would be entitled to foreclose the property according to the underlying mortgage instruments. In other words, the parties agreed that Mrs. *647 Litton’s payment of $10,000 and $55,000 by June 30, 2000 was a condition precedent to further financing by Wachovia on new terms. At the parties’ invitation, the bankruptcy court entered an Agreed Order memorializing the settlement.
Wachovia initiated foreclosure proceedings when Mrs. Litton failed to make the scheduled payment of $55,000 by June 30, 2000. Shortly before the foreclosure, Mrs. Litton filed the instant Chapter 13 petition and proposed a plan whereby she would “catch up in arrearages in payments to Wachovia Bank ($55,000) ... within 30 days, and ... make regular payments as called for by agreement.”
The bankruptcy court dismissed Mrs. Litton’s petition, ruling that her proposed plan violated the terms of the Agreed Order because that plan proposed to “make a new agreement between the parties directly contrary to the provisions of their original agreement.” It was important to the bankruptcy court — as it should be to this Court — that “[pjrior to the making of such agreement the full balance owing on the note secured by the deed of trust was already due and payable.”
II.
The majority correctly recognizes that the outcome of this appeal turns on the characterization of Mrs. Litton’s proposed Chapter 13 plan as a modification or a cure.[1] Modification and cure are distinct concepts in the Bankruptcy Code. Landmark Fin. Servs. v. Hall, 918 F.2d 1150, 1154 (4th Cir.1990); Matter of Clark, 738 F.2d 869, 871-72 (7th Cir.1984); In re Taddeo, 685 F.2d 24, 27 (2d Cir.1982).
11 U.S.C. § 1322(b)(2) provides that a chapter 13 plan may “modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor’s principal residence.” This provision “allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor’s home.” Nobelman v. American Sav. Bank, 508 U.S. 324, 327, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). By virtue of its mortgage contract with Mrs. Litton, Wachovia is “indisputably the holder of a claim secured by a lien on [Mrs. Litton’s] home.” Id. at 328, 113 S.Ct. 2106. Wachovia’s rights as mortgagee are those that are “reflected in the relevant mortgage instruments” and were “bargained for by the mortgagor and the mortgagee.” Id. at 329-30, 113 S.Ct. 2106. Under the deed of trust at issue in this case, Wachovia retained the right to foreclose Mrs. Litton’s property once the mortgage matured. Under § 1322(b)(2), Mrs. Litton could not “modify” Wachovia’s right to foreclose upon maturity of the debt.
The Bankruptcy Code does not define the term “modify.” Other courts have held that a plan impermissibly modifies a mortgagee’s rights where (1) it seeks to *648 delay payment of an unaccelerated debt that has naturally matured prior to the filing of the case, see Matter of Cooper, 98 B.R. 294, 298-99 (Bankr.W.D.Mich.1989); (2) it seeks to bifurcate treatment of the amount due under a mortgage into secured and unsecured claims, see In re Schum, 112 B.R. 159, 162 (Bankr.N.D.Tex.1990); or (3) it seeks to convert a demand loan obligation with a variable interest rate into a term loan with a fixed interest rate, see In re Coffey, 52 B.R. 54, 55 (Bankr.D.N.H.1985). Indeed, the majority is quite correct that an attempt to “alter fundamental aspects of the debtor’s obligations” is a modification forbidden by § 1322(b)(2).
Cure under § 1322(b)(5) is different. While a modification impermissibly alters the debtor’s obligations with respect to a mortgage — depriving the mortgagee of its original bargain — a cure simply reinstates the existing mortgage agreement as if the debtor had never defaulted. Landmark Fin. Servs., 918 F.2d at 1154; Matter of Metz, 820 F.2d 1495, 1497 (9th Cir.1987) (stating that a cure “simply reinstates the original debt after correcting the arrearag-es”). This Court has noted that “[c]ure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts.” Landmark Fin. Servs., 918 F.2d at 1154 (internal quotations omitted). In other words, “[during a default commonly means taking care of the triggering event and returning to pre-default conditions.” In re Taddeo, 685 F.2d at 26-27. Accord In re Hurt, 158 B.R. 154, 159-60 (9th Cir. BAP 1993) (stating that a cure restores the debtor’s mortgage “to its original state before the default regardless of what action the mortgagee has taken”); Matter of Clark, 738 F.2d at 872 (“[A]s the term relates to defaults, ‘cure’ means to restore matters to the status quo ante.”).
III.
Mrs. Litton’s proposed plan was not a cure because it would not merely restore the status quo ante; to the contrary, it would re-write the most basic terms of the mortgage. Under the status quo ante, Wachovia held a matured mortgage. Although Wachovia offered Mrs. Litton an opportunity to obtain further financing and avoid foreclosure, such financing was available only if Mrs. Litton made the $55,000 payment by. June 30, 2000. Thus, on the date of the default — June 30, 2000 — Wa-chovia was entitled to foreclose unless Mrs. Litton satisfied the condition precedent of payment.
Rather than restoring the status quo ante, Mrs. Litton’s proposed plan would create a new mortgage altogether. Under her plan, Mrs. Litton would make a payment of $55,000 (the payment she had missed) to Wachovia; in return, Wachovia would continue to finance her property on the new terms outlined in the settlement agreement. Presumably, Mrs. Litton would be entitled to re-amortization of the balance of her debt using a 15-year term and the residential mortgage rates prevailing on June 30, 2000. She would be entitled to a payment schedule calling for annual payments of $10,000 with the entire obligation to mature in March 2005. These are new terms — more favorable to Mrs. Litton — for which Wachovia received no consideration at all. In short, Mrs. Litton’s plan would require Wachovia to continue financing the purchase of her home under terms other than the terms of the mortgage instrument in effect before her default.[2]
*649 Contrary to the majority’s assertions, Mrs. Litton’s proposed Chapter 13 plan did propose an extension of the final maturity date of the Littons’ debt to Wachovia, from January 2000 to March 2005. And confirmation of Mrs. Litton’s plan will place Wachovia in a worse position than it was in under the 2000 agreement: Wacho-via will lose entirely the benefit of holding a matured mortgage, and it will be forced to undertake additional financing obligations on terms more favorable to Mrs. Litton. This plan simply is not a cure.
Even if the majority were correct that Mrs. Litton’s proposed plan amounts to a cure, the relevant cure provision cannot save Mrs. Litton in this case. Section 1322(b)(5) permits cure only with respect to “any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.” Thus, “if a large final balloon payment is due on a debt prior to the termination of the plan, section 1322(b)(5) may not be utilized.” 8 Collier on Bankruptcy § 1322.09[2], at 1322-30 (15th ed. rev.2003). The final balloon payment on Wachovia’s mortgage was due on January 30, 2000 — nine months before Mrs. Litton even proposed her plan. Accordingly, Mrs. Litton cannot rely upon § 1322(b)(5) to authorize any cure in this case.[3]
IV.
The bankruptcy court was exactly right: “Wachovia’s agreement to restructure and extend significantly the payment terms to the benefit of the Littons was contingent upon their making a $55,000 payment by June 30. When the Littons failed to do so, Wachovia was relieved of any obligation to continue to hold open these favorable terms until the Littons could manage to take advantage of them.” (Emphasis added.) Mrs. Litton’s proposed plan attempts just the kind of modification that the Bankruptcy Code forbids and that Mrs. Litton herself agreed not to make. The bankruptcy court was well within its discretion to interpret its own order, in accordance with the Bankruptcy Code, to dismiss Mrs. Litton’s latest Chapter 13 petition. I would affirm that judgment.

. I note, however, my disagreement with the majority's analysis of this issue as a matter of contract interpretation. The bankruptcy court did not dismiss Mrs. Litton's Chapter 13 petition for failure to comply with a contractual obligation; rather, the dismissal was premised on Mrs. Litton's violation of the bankruptcy court's order memorializing a settlement. The bankruptcy court was authorized to interpret its own order, subject to the rule that its interpretation must be consistent with the Bankruptcy Code. See 11 U.S.C. § 105(a) (authorizing a bankruptcy court to "issue any order, process, or judgment necessary or appropriate to carry out the provisions” of the Bankruptcy Code). Thus, it is necessary to determine whether Mrs. Litton’s proposed plan amounted to a modification or a cure in order to determine whether the bankruptcy court's interpretation of its own order comports with the substantive provisions of the Bankruptcy Code, not to divine the meaning of an ambiguous contract term.

. The majority must presume that the new terms described in the settlement will govern the mortgage if Mrs. Litton makes the payments called for in her proposed plan. Counsel for Mrs. Litton did not even accept that proposition, representing at oral argument that Mrs. Litton would insist upon some — but not all — of the terms contained in the settlement. For instance, counsel stated that Mrs. *649 Litton would not take the benefit of the new rate or the 15-year re-amortization term, but that she would be bound to make payments of at least $10,000 each year. Counsel’s careful refusal to say that the mortgage would be governed by precisely the same terms that governed the mortgage prior to the default undermines the contention that this proposed plan is merely a cure that restores the status quo ante.

. The majority opinion concludes that § 1322(b)(5) applies in this case because the Agreed Order contemplated maturity of the mortgage obligation in 2005. The majority opinion misreads the Agreed Order. The Agreed Order, memorializing the settlement reached by the parties, stated that Wachovia would continue financing on new terms described in the order "[i]n the event” that Mrs. Litton made the scheduled payments on or before June 30, 2000. And "[i]n the event” that Mrs. Litton failed to make this payment, Wachovia would "be entitled to proceed to enforce its non-bankruptcy law rights and remedies with respect to its collateral pursuant to” the existing mortgage instruments, which provided for a January, 2000 maturity date. It is clear from these plain terms that Wachovia still held its matured mortgage and that the effect of the order was merely to offer Mrs. Litton a last chance to pay to obtain future financing. When she failed to make payment by June 30, 2000, there was no new financing arrangement in place and Wachovia was entided to "proceed to enforce its non-bankruptcy rights and remedies” just as the Agreed Order provided.